```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                                 - - -
      IN RE:
 4
      MOTIONS FOR ACCESS OF GARLOCK        :    CIVIL ACTION
 5    SEALING TECHNOLOGIES LLC,            :
                                           :    NO. 11-1130-LPS
 6
                                       - - -
 7
                              Wilmington, Delaware
 8                            Tuesday, June 12, 2012
                              Oral Argument Hearing
 9
                                       - - -
10
      BEFORE:         HONORABLE LEONARD P. STARK, U.S.D.C.J.
11
                                       - - -
12    APPEARANCES:

13
                 MORRIS NICHOLS ARSHT & TUNNELL, LLP
14               BY:  GREGORY W. WERKHEISER, ESQ., and
                      MATTHEW B. HARVEY, ESQ.
15
                      and
16
                 ROBINSON, BRADSHAW & HINSON, P.A.
17               BY:  GARLAND S CASSADA, ESQ., and
                      RICHARD C. WORF, ESQ.
18                    (Charlotte, North Carolina)

19                          Counsel for Appellants

20
                 RICHARD LAYTON & FINGER, P.A.
21               BY:  JASON MICHAEL MADRON, ESQ.

22                    and

23

24
                                   Brian P. Gaffigan
25                                 Registered Merit Reporter
```

```
 1    APPEARANCES:   (Continued)

 2
                WEIL GOTSHAL & MANGES, LLP
 3              BY:   DEBRA A. DANDENEAU, ESQ., and
                      ABIGAIL L. ZIGMAN, ESQ.
 4                    (New York, New York)

 5                         Counsel for Armstrong World
                           Industries, Inc.
 6

 7              MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP
                BY:   NATALIE D. RAMSEY, ESQ., and
 8                    DAVIS LEE WRIGHT, ESQ.

 9                         Counsel for Appellees Kazan, McClain,
                           Lyons, Greenwood & Harley; Waters &
10                         Kraus LLP; Simmons Browder Gianaris
                           Angelides & Barnerd LLC; Bergman,
11                         Draper & Frockt, Gori, Julian &
                           Associates, P.C.; Early, Lucarelli,
12                         Sweeney & Strauss; Cooney & Conway;
                           Lipsitz & Ponterio, LLC; Bifferato LLC;
13                         and Montgomery, McCracken, Walker &
                           Rhoads, LLP

14

15              THE HOGAN LAW FIRM
                BY:   DANIEL K. HOGAN, ESQ.
16
                          and
17
                STUTZMAN, BROMBERG, ESSERMAN & PLIFKA
18              BY:   SANDER L ESSERMAN, ESQ.
                      (Dallas, Texas)
19
                           Counsel for f Peter G. Angelos, P.C.;
20                         Baron & Budd, P.C.; Brayton Purcell, LLP;
                           Hissey Kientz, LLP; The Lipman Law Firm;
21                         Reaud, Morgan & Quinn, Inc.; Thornton &
                           Naumes, LLP; Waters & Kraus, LLP;
22                         Weitz & Luxenberg P.C.; and Williams
                           Kherkher Hart Boundas, LLP
23

24

25
```

```
 1   APPEARANCES:  (Continued)

 2
                  SAUL EWING, LLP
 3                BY:  ADAM. H. ISENBERG, ESQ., and
                       LUCIAN MURLEY, ESQ.
 4
                            Counsel for Reorganized Owens Corning
 5

 6                CAMPBELL & LEVINE, LLC
                  BY:  KATHLEEN CAMPBELL DAVIS, ESQ.
 7
                       and
 8
                  CAPLIN & DRYSDALE, CHARTERED
 9                BY:  KEVIN C. MACLAY, ESQ., and
                       TODD E. PHILLIPS, ESQ.
10                     (Washington, District of Columbia)

11                            Counsel for the Official Committees
                              for Asbestos Claimants Flintcote,
12                            Grace, NARCO, and Pittsburgh Corning

13
                  SIDLEY AUSTIN, LLP
14                BY:  CHRISTINA M. CRAIGE, ESQ.
                       (Los Angeles, California)
15
                            Counsel on behalf of Funco Co.
16

17                UNITED STATES TRUSTEE'S OFFICE
                  BY:  DAVID M. KLAUDER, ESQ.
18
                            Counsel on behalf of U.S. Trustee
19

20                K&L GATES
                  BY:  JEFFREY RICH, ESQ.
21
                            Counsel on behalf of Reorganized
22                          Combustion Engineering

23
                  THE ROSNER LAW GROUP LLC
24                BY:  SCOTT J. LEONHARDT, ESQ.

25                          Counsel on behalf of Reorganized Debtor
                            United States Mineral Products Company
```

```
 1                        - oOo -

 2                  P R O C E E D I N G S

 3              (REPORTER'S NOTE:  The following oral argument

 4      hearing was held in open court, beginning at 9:32 a.m.)

 5              THE COURT:  Good morning.

 6              (The attorneys respond, "Good morning, Your

 7      Honor.")

 8              THE COURT:  Again, I know it may take some

 9      time but let's put your appearances on the record for me,

10      beginning on this side here.

11              MR. WERKHEISER:  Good morning, Your Honor.

12              THE COURT:  Good morning.

13              MR. WERKHEISER:  For the record, Greg Werkheiser

14      from Morris Nichols, Delaware counsel on behalf of appellate

15      Garlock.  At counsel table, I'm joined by Mr. Garland Cassada

16      from Robinson Bradshaw and his colleague Richard Worf

17      appearing on behalf of Garlock and my associate Matthew Harvey.

18              THE COURT:  Welcome to you.

19              MR. WERKHEISER:  Thank you.

20              THE COURT:  And then the appellees.

21              MS. RAMSEY:  Good morning, Your Honor.

22              THE COURT:  Good morning.

23              MS. RAMSEY:  Natalie Ramsey from Montgomery

24      McCracken Walker & Rhoads on behalf of several law firm

25      objectors and appellees here.
```

```
 1                    THE COURT:  Okay.

 2                    MR. ESSERMAN:  Good morning, Your Honor.  Sandy

 3       Esserman on behalf of several of the appellees law firms,

 4       along with Dan Hogan who is our local counsel.

 5                    THE COURT:  Okay.

 6                    MS. DANDENEAU:  Good morning, Your Honor.

 7       Deborah Dandeneau from Weil Gotshal here on behalf of the

 8       reorganized Armstrong World Industries.

 9                    MR. RICH:  Good morning, Your Honor.  Jeffrey

10       Rich of K&L Gates on behalf of Reorganized Combustion

11       Engineering.

12                    THE COURT:  Thank you.

13                    MR. MACLAY:  Good morning, Your Honor.

14                    THE COURT:  Good morning.

15                    MR. MACLAY:  I'm Kevin Maclay from Caplin

16       Drysdale on behalf of four asbestos creditor committees.

17       I'm joined by my colleague, Mr. Todd Phillips; and

18       Ms. Kathleen Campbell Davis from Campbell & Levine is also

19       here with us today.

20                    THE COURT:  Okay.  Thank you.

21                    MR. ISENBERG:  Good morning, Your Honor.

22                    THE COURT:  Good morning.

23                    MR. ISENBERG:  Adam Isenberg, Saul Ewing on

24       behalf of Reorganized Owens Corning.  I'm here with my

25       colleague Luke Murley in the front row.  Thank you.
```

```
 1                      THE COURT:  Thank you.

 2                 That's everybody?  No?

 3                      MR. LEONHARDT:  Good morning, Your Honor.  For

 4     the record, it's Scott Leonhardt of the Rosner Law Group,

 5     Delaware counsel to Reorganized ACandS and U.S. Mineral

 6     Products Company.

 7                      THE COURT:  Okay.  Thank you.

 8                 All right.  I'll take it that is everybody who

 9     wishes to enter an appearance today.

10                 So we're here on the appellant's appeal as

11     well as their request, that is Garlock, that the Court take

12     judicial notice of certain legislation.  As you all know,

13     we've allocated an hour per side for argument.  How is it

14     that appellees propose to split up their time?  I would just

15     like a heads up on that.

16                      MS. RAMSEY:  Your Honor, we proposed to split

17     our time roughly in four segments.  First, the two law firm

18     representatives, myself and Mr. Esserman and, third, the

19     committee as represented by counsel for Caplin & Drysdale,

20     and the debtor's representatives intend to take about five

21     minutes.

22                 Your Honor, to address their issues, we

23     understand, depending on whether Garlock is intending to

24     reserve a substantial amount of time for rebuttal or a more

25     moderate amount of time, we may seek to have some of our
```

1    time in surrebuttal, depending upon what Garlock has in

2    mind.

3              THE COURT:  Okay.  Thank you.

4              Garlock, how much time are you intending to

5    reserve for rebuttal?

6              MR. CASSADA:  Your Honor, I intend, depending on

7    the questions the Court has, I intend to reserve 40 minutes.

8              THE COURT:  Reserve 40 minutes?

9              MR. CASSADA:  40 of the hour, yes.

10             THE COURT:  All right.  I'll permit you to

11   reserve 20 minutes of the hour.

12             MR. CASSADA:  Okay.

13             THE COURT:  All right.  Well, let's get started

14   with hearing from the appellant.

15             Thank you.

16             MR. CASSADA:  Thank you.  And good morning, Your

17   Honor.  My name is Garland Cassada.  I'm with the Robinson

18   Bradshaw & Hinson firm in Charlotte, North Carolina.  We

19   represent Garlock Sealing Technologies.

20             As the Court knows, Garlock appeals from the

21   Bankruptcy Court's denial of Garlock's motion to access

22   judicial records.  The records in question are Rule 2019

23   statements and, in particular, exhibits to Rule 2019

24   statements that identify creditors to the bankruptcy cases.

25   Garlock also appeals the denial of its motion to intervene

1    in the nine bankruptcy cases in the Delaware courts.

2            Your Honor, Garlock contends that the Bankruptcy

3    Court failed to recognize that the Rule 2019 statements and

4    exhibits were judicial records subject to a presumptive

5    right of access under the common law and under Bankruptcy

6    Code Section 107 and also under the First Amendment to the

7    Constitution.

8            As a result, the Court failed to articulate the

9    findings necessary to override the presumption of access or

10   engage, and the Court also failed to engage in the balancing

11   to determine whether the exhibits were the type of

12   information courts would normally protect and whether there

13   was a clearly defined and serious injury to be prevented.

14           Those are the balancing factors set forth in the

15   *Goldstein* case, Your Honor, by the Third Circuit which has

16   been recognized repeatedly in the courts in this Circuit and

17   Circuit Court since *Goldstein*.

18           THE COURT:  All right.  So if I agree with you

19   that lower court failed to articulate those findings, should

20   I remand it for the Bankruptcy Court to make those findings?

21           MR. CASSADA:  No, Your Honor.  I believe the

22   record is adequate for this Court to determine that there is

23   no basis for any such findings.  The Bankruptcy Court gave

24   all the parties ample opportunity to present evidence, in

25   fact kept the record open for a long period of time.  And,

1     indeed, Your Honor, we're talking about Rule 2019, a

2     disclosure order.  And it seems, it seems to us hardly

3     conceivable that there could be reasons to justify the

4     sealing of the names of people who authorized lawyers to

5     appear in a case and identify them as creditors.  We don't

6     believe that there is evidence that would seal the names

7     of those persons.

8                THE COURT:  If I have to make a determination as

9     to whether you seek access for a proper purpose, how do I go

10    about making that determination?

11               MR. CASSADA:  Your Honor, you go about that

12    determination by applying the *Goldstein* standards and that

13    is, first, you determine whether the documents that are

14    sought to be accessed are the type of documents or judicial

15    records that courts will protect.  And then you consider

16    whether evidence was offered, the burden was met by the

17    objectors that the disclosure of that evidence would render

18    clearly defined serious injury.

19               If that standard can't be met, then Garlock's

20    purpose by definition is proper.  So that's the way we think

21    the case should be resolved:  By applying the *Goldstein*

22    standards or by looking at Bankruptcy Code Section 107 which

23    provides presumptive right, statutory access and delineates

24    several narrow exceptions to that access.

25               THE COURT:  Now, you could have maybe proceeded

1    that way but in this case you have articulated several

2    purposes.  You're now saying I don't have to evaluate

3    Garlock's motivations and its stated purposes for seeking

4    access?

5              MR. CASSADA:  In connection with your

6    determination regarding whether there is a clearly defined

7    and serious injury, then perhaps you could consider those

8    purposes, but the fact is Garlock's purposes are not

9    relevant.  It has a right, a general right as a member of

10   the public to access public documents.  And, certainly, the

11   objectors might come forward and try to make some showing

12   that Garlock has an improper purpose and particularly one

13   that would render a clearly defined and serious injury.  But

14   that hasn't happened here.

15             Garlock has been claiming that its purpose is

16   to use the 2019 statements in its own bankruptcy case and

17   in connection specifically with the aggregate estimation of

18   Garlock's responsibilities to asbestos funds.  The documents

19   are relevant for that purpose.  We think that we provided

20   ample authority that the use of judicial records from one

21   court -- in one court for use in another court is an

22   eminently proper purpose.

23             THE COURT:  Now, you also threaten, though, to

24   launch some massive national RICO case against law firms.

25   What if I think that would be improper?  How do I factor

1    that in?

2                    MR. CASSADA:  Well, Your Honor, I don't know

3    that that is a full description of it.  We have stated

4    that Garlock believes based on the macro evidence that

5    claimants were not forthcoming in their claims against

6    Garlock about their exposures to bankrupt defendants would

7    be their responsibility.  And Garlock would evaluate from

8    the evidence uncovered whether it would be appropriate to

9    assert a claim.  And,

10                   Again, Your Honor, we don't believe that is an

11   improper purpose.  We think that is a quintessential proper

12   purpose.  Indeed, the purpose of public disclosure is, among

13   others, to minimize the possibility of abuse in courts and

14   to enhance the perception of fairness in the court system.

15   And it's exactly that kind of policing and examination of

16   public records that encourages parties not to engage in

17   abuse, not to take inconsistent positions from one court

18   to another.

19                   So certainly, Your Honor, we don't believe that

20   the potential use of documents to sustain claims in other

21   cases is an improper purpose.

22                   THE COURT:  If I decide I have to reach the

23   question of whether your purposes, your stated purposes are

24   proper, is that an issue of law or a question fact or is it

25   a mixed question of law and fact?

1           MR. CASSADA:  I believe it's a question of law.

2    Because, again, as we've stated, the correct analysis under

3    the case law is to consider whether the information is the

4    kind of information courts protect and whether there is a

5    serious and clearly defined injury.  Potential use of

6    documents in litigation against claimants just doesn't fall

7    within that.

8           I mean certainly claimants can argue that the

9    2019 statements don't prove what Garlock might contend that

10   they prove, or perhaps that they don't say what the 2019

11   statements say.  That is the appropriate remedy.  But to

12   hold the potential use of these documents in a lawsuit is an

13   improper purpose as noted.  That has been clearly squarely

14   addressed and rejected by previous opinions even by the

15   Circuit Court.

16          THE COURT:  As you say, one of the purposes that

17   you apparently want to use these materials for is in your

18   own bankruptcy.  The appellees, at least some of them say,

19   well, go ahead and seek those, these same materials or the

20   same information at least in discovery through your own

21   bankruptcy.

22          It appears you haven't yet done that, but help

23   me understand if you have done it and why that would not be

24   adequate.

25          MR. CASSADA:  Yes.  Actually, we have done that,

1    Your Honor.  We've sought copies from law firms.  And our

2    bankruptcy judge held that in the context of discovery, it

3    did not permit that discovery.

4           But this is an entirely different request here.

5    This is a request as a member of the public for something

6    that is undeniably a judicial record.  These are records filed

7    in the court, maintained with the clerk that identifies the

8    persons who claim injury at the hands of each of these debtors.

9           So the question whether Garlock might be able to

10   get these documents from some other source is not relevant.

11   The question, again, is whether there is a presumptive

12   right of access.  And this decision is guided by whether

13   the objectors, the persons who would keep the documents

14   protected and outside the domain of the public, have made

15   the showing, proven the showings required by *Goldstein*.

16          THE COURT:  You say materials you are seeking

17   are undeniably a court record, but, of course, there is a

18   lot of dispute about that or at least the dispute as I

19   understand it is whether or not they were filed with the

20   Bankruptcy Court.  Is there a finding on this?  Or what is

21   my record as to whether the exhibits you are seeking are

22   actually filed and/or a court record?

23          MR. CASSADA:  We think the -- I mean the

24   evidence is ample and overwhelming, Your Honor.  I had

25   handed to the clerk before I came up here a few documents

1    that I will refer to, one of them at least that addresses

2    that point.

3              These are all from the record of appeal.

4              First, Your Honor, this is the final order that

5    was entered in the cases regarding the treatment of Rule

6    2019 statements and the exhibits that would be found to

7    those statements.  From this, it's clear to begin with

8    that the 2019 statements filed under Rule 2019, these are

9    statements that are to be filed.  So the rule itself

10   requires that the statements be filed.

11             If you look at the order in the second

12   paragraph, it says that within 60 days from the date of this

13   order.  It has an exception but any entity representing more

14   than one creditor who entered an appearance, filed a claim,

15   cast a ballot or taken any other affirmative action to

16   participate in the debtor's bankruptcy case in any way

17   shall file with the clerk a statement (a 2019 statement)

18   containing the information described below.

19             So the order itself says that these are to be

20   filed.

21             Below that, it fleshes out what the definition

22   of what a 2019 statement is.  And I'm looking in the middle

23   of the page, Your Honor.

24             It is further ordered that the 2019 statement

25   shall be a verified statement identifying the name and

1   address of the entity filing such statement and that

2   includes the following exhibits.

3           So the 2019 statement is a verified statement

4   and it includes exhibits.  And the exhibits include a blank

5   but unredacted exemplar or an actual copy of each form of

6   agreement or instrument; if any, whereby such entity is

7   empowered to act on behalf of creditors or equity security

8   holders in the case.  So the 2019 statements includes

9   evidence that the lawyers are authorized by the persons they

10  elected to make an appearance in the case for those persons.

11          And then another exhibit is key to our case.

12  It is an Excel spreadsheet that contains electronic

13  information, and that information includes:

14          Specific data, the name of each creditor or

15  equity security holder represented by the entity filing the

16  2019 statement.

17          The personal address of each such creditor or

18  equity security holder.

19          Reserved space for the Social Security number or

20  other identifier as may be required by a further Order of

21  the Court.

22          We're unaware that there was any further Order

23  of the Court entered there.  In fact, there is no evidence

24  that there was.  And the best information we have is that

25  the 2019 statements do not include Social Security numbers.

1          Identification of the form of exemplar

2     referenced in Item No. 1 above executed by the creditor or

3     equity security holder, and the date such agreement was

4     entered here.

5          The amount of the claim of any creditor, if

6     liquidated, and for unliquidated claims, an indication that

7     such claims are unliquidated.

8          The date of acquisition of the creditor's claim

9     unless the claim was acquired more than a year before the

10    case.

11         For personal injury claimants, the type of

12    disease giving rise to the claim.  And,

13         For all other claimants, the nature of the claim

14    or interest.

15         There is no requirement that any medical records

16    be provided.  The only thing the 2019 order requires, that

17    the type of disease be identified.  Then a recital of the

18    pertinent facts and circumstances in connection with the

19    employment of the entity or the entities of said case.  In

20    the case of a committee, the names of the entity or entities

21    at whose instance directly or indirectly the employment was

22    arranged or the committee was organized or agreed to act.

23         So from the order, Your Honor, it's clear that

24    the 2019 statements are to be filed and the 2019 statements

25    include the exhibits.

1          THE COURT:  Yes.  Of course, there is a specific

2    paragraph addressing the exhibits which you didn't go over

3    with us.

4          MR. CASSADA:  Okay.

5          THE COURT:  It's on the second page and says,

6    it is further ordered that exhibits required to be filed and

7    listed below shall not be electronically filed but shall be

8    submitted to the clerk on compact disk.  Doesn't that mean

9    that those exhibits are not filed, they're simply submitted?

10         MR. CASSADA:  There is a distinction here

11   perhaps between filing something on electronic docket and

12   submitting it to the clerk, which is also filing it.  The

13   documents are part of the Court's files.  They're part of

14   the clerk's files.  The Third Circuit has dealt with the

15   definition of a judicial record.  And it includes any

16   document in the possession of the Court or the clerk, any

17   document in the clerk's file.

18         Your Honor, if we look at page 4 of the order,

19   it says that, it is further ordered that when this case is

20   closed, the clerk shall archive the 2019 statements and

21   supplements with the case file.

22         That makes these judicial records.  They're part

23   of the Court's file.

24         THE COURT:  Were the exhibits anywhere relied on

25   or cited by the Bankruptcy Court in any of its rulings?

1           MR. CASSADA:  As we understand it, even in the

2     ruling denying access, the Court says that it did make

3     exhibits available to parties so that they could police the

4     votes that were cast in favor of the plan.  So the exhibits

5     were -- the best evidence we have is that they were used in

6     the bankruptcy case.

7           THE COURT:  Do I need to make a factual finding?

8     Because it's the exhibits that you are seeking, right?

9           MR. CASSADA:  That's correct.  It's the verified

10    statement is part of the electronic docket.

11          THE COURT:  Right.  You have seen the verified

12    statement?

13          MR. CASSADA:  Correct.

14          THE COURT:  So what is at issue is the exhibits.

15    Do I have to make a finding as to whether the exhibits are a

16    judicial record?

17          MR. CASSADA:  Well, since, as the Court pointed

18    out, the objectors, at least some of the objectors have

19    disputed that they're judicial records, so you would have to

20    make a determination whether they're judicial records.  And

21    we think that as a matter of law, these are judicial records,

22    and there is case law to assist the Court on that.

23          THE COURT:  Is that an issue on which the

24    Bankruptcy Court made a finding?

25          MR. CASSADA:  The bankruptcy did not

1    specifically address that issue.  And I may be corrected

2    on this.  I'm not sure it was raised below.  I'm not sure

3    anyone below disputed they were a judicial record.  The

4    Bankruptcy Court did make certain statements and suggestions

5    that suggest that the Court was assuming that they were

6    judicial records.  For example, the Court suggested that

7    the Court had made findings necessary to avoid public access

8    under Section 107(c).

9              I also might add, Your Honor, there are three

10   appellate decisions in which the insurers in the case appeal

11   the Court's 2019 order.  They appealed the process that the

12   Court had set forth to obtain judicial -- to obtain the 2019

13   statement.  And those cases themselves acknowledge that

14   these are documents to which public access would apply.

15             If we look at one of these decisions, and this

16   comes out of the Western District of Pennsylvania.  This is

17   the *Pittsburgh Corning* decision.

18             The Court, when explaining why the appeal of the

19   insurer was not ripe, and you will see beginning at the

20   bottom of the first column that the Bankruptcy Court in this

21   case made clear that it is important to have the statements

22   filed and that the issue of access would be addressed if,

23   and when, a party files a proper motion.  The parties,

24   rather than appealing the matter should have filed a motion

25   and permitted the Court to develop a record with respect

1   to whether Section 107 of the Bankruptcy Code and the First

2   Amendment and common law rights of public access mandate a

3   right of public access or whether countervailing concerns

4   justify the continued protection of the information.

5           The Court pointed out if a motion is filed and

6   briefed, the Bankruptcy Court, after notice and hearing, may

7   well conclude that the information initially protected by

8   the 2019 order should be filed of record for public access.

9   It is appropriate for the Bankruptcy Court to resolve the

10  issue before this Court considers the matter.

11          So we think there that the reviewing courts

12  were drawing a distinction between filing something with the

13  court and filing something of record for public access, and

14  that the public access rules applied to these documents.

15          Your Honor, because there is so much written

16  in our briefing about the information and material that is

17  at issue here, I wanted to focus on a few of the 2019

18  statements that were actually filed.  These are all part of

19  the record on appeal.  This appear at tab 95 of the Garlock

20  record on appeal.

21          This is the 2019 statement which is a verified

22  statement filed by one of the objector law firms.  You will

23  note in paragraph 4, the firm states, that as of the date of

24  this statement, each creditor listed on Exhibit 2 (filed per

25  court order with the clerk of the Bankruptcy Court, but not

1    attached hereto) has executed an addendum to representation

2    agreement authorizing the Law Offices of Peter G. Angelos,

3    P.C. to act on behalf of each creditor in these cases.

4            Now, this is a sworn statement that each person

5    listed has authorized a law firm to appear and act on behalf

6    of such person in this case.

7            Then you will see in paragraph 5, a statement

8    that says the creditors hold either unliquidated claims or

9    claims in varying amounts -- I'll go over to the next

10   page -- for monetary damages due to personal injury caused

11   by the debtors for manufacturing, marketing, distributing,

12   selling, installing, producing and/or specifying the use of

13   asbestos or asbestos containing products.

14           So we see here, there is no equivocation in

15   this.  The rule requires you to list creditors who you

16   represent and who appear for in the case.  It doesn't

17   require you to identify anyone else.  Creditors.  And these

18   statements, which are verified, say unequivocally that these

19   are creditors that are represented in these cases and,

20   specifically, that were injured by the products of this

21   particular debtor.

22           THE COURT:  The Bankruptcy Court faulted you

23   for assuming that everybody listed in a 2019 statement is a

24   creditor.  Are you making that assumption?

25           MR. CASSADA:  No, I'm not making that

1    assumption, Your Honor.  I'm relying on Rule 2019, the

2    requirements.  I'm relying on the only evidence of record in

3    these cases which is an unequivocal statement filed under

4    oath by the law firms who have identified these people that

5    these people are creditors in this case.

6            THE COURT:  Does that mean that each of these

7    individuals ultimately filed a proof of claim?

8            MR. CASSADA:  Well, we don't know that, Your

9    Honor, because we don't have access to who these folks are.

10   But in these asbestos bankruptcies, only on a very few of

11   them has there been a requirement that the claimants even

12   file proofs of claim.

13           That is a problem we think for the general

14   public and for codefendants like Garlock because if you look

15   at one of these bankruptcy cases, you can't tell who the

16   creditors are.  The only times that the lawyers identify

17   their creditors are in the 2019 statements or perhaps later

18   when creditors vote on a plan of reorganization.

19           THE COURT:  At least the Bankruptcy Court

20   thought that you were equating the 2019 statement with a

21   proof of claim.  You are equating everybody listed there as

22   being a creditor, and you are making assumptions that are

23   just not valid based on the limited purpose of a 2019 in

24   the early time in the case at which it arises.  Was the

25   Bankruptcy Court wrong about its understanding of your

1    position?

2              MR. CASSADA:  Well, inasmuch as the Bankruptcy

3    Court concluded that we were making unfounded assumptions,

4    yes, the Bankruptcy Court was wrong.  The 2019 statements,

5    if they don't include or at least establish that these

6    people are creditors or at least they claim to be creditors,

7    they hired a law firm and they have authorized a law firm

8    to appear in the case for them and to represent that they're

9    creditors.  Garlock certainly has a right, a right to access

10   those and to use them for whatever they're worth.  And

11   they would be, under the Rules of Evidence, they're party

12   admissions.  They're admissions by persons that they have

13   claims against the debtors.

14             Now, some of the 2019 statements go into more

15   detail about the basis of claims than others.  But it's

16   clear these are entitled to weight and they show, they're

17   evidence that the persons listed do have claims.

18             Now, the Bankruptcy Court said a lot about 2019

19   statements.  None of it was supported by the evidence in the

20   record.  They were all unsupported statements that didn't

21   even acknowledge what the Rule 2019 actually requires, what

22   the 2019 order actually said and what the statements filed

23   by the lawyers actually say.

24             And I have others, Your Honor, that say the same

25   thing.  I won't belabor the point, but the fact is that you

1       can search, you can look at the 2019 statements in this

2       case and they are statements by law firms that they've been

3       authorized to appear.  That they have knowledge of the

4       facts, that they're certifying in these statements, and that

5       these people are creditors.  Most of them go more than that

6       and say these people were exposed to the products of this

7       debtor, and they're injured by those products.

8               So certainly, Your Honor, those statements

9       are evidence that these people have claims and there is no

10      evidence in the record, there is nothing in the statement

11      themselves that equivocate on that.

12              Moreover, if you look at the information we're

13      talking about, this is not sensitive information.  These are

14      the identities of creditors, their addresses, the nature of

15      their claims, the injuries they're alleging, no confidential

16      and medical information.  This is the very kind of information

17      that a person who appears in a federal court has to provide

18      on public record their identity and the nature of their

19      claims.  That is what this is.  It's nothing else.

20              We think that it's extraordinary that there is

21      no basis to allow asbestos creditors to have an exception to

22      the rule, that when they appear in a court that they have to

23      identify themselves.

24              THE COURT:  Those creditors allow themselves to

25      be listed in the exhibits.  It was done chronologically

1    after the 2019 order was entered that you showed us and,

2    therefore, they did it, didn't they, in reliance on the

3    protections that are set out there?  Namely, that the

4    exhibits were not going to be arguably filed, at least were

5    not going to be on the public record initially.  Didn't they

6    reasonably rely on that in allowing their name and their

7    disease and their address to be listed?

8              MR. CASSADA:  Well, no.  No, Your Honor.  I

9    don't believe so.  I think anyone who files information in

10   reliance of a protective order does so with an understanding

11   that protective orders are subject to revision and that

12   parties may get relief.

13             That principle appears in the cases we cited,

14   including the *Alterra* case where the Court entered a

15   protective order.  But then reliance on this particular

16   order would be especially unjustified and not reasonable

17   because it didn't guarantee protection.  All it did was

18   set up a process by which a person could come and ask the

19   Court for access to the statements.  It didn't say that

20   the statements were going to be protected and not given to

21   people who ask for them.  It simply set out a procedure.  So

22   it would be unreasonable for claimants to rely on them.

23             And why should we fear that they rely on them?

24   These are only people who are identifying that they have

25   claims against a debtor.  Why should we worry about whether

1    that is protected information?

2              THE COURT:  Well, the Bankruptcy Court seemed

3    worried about the possibility of identity theft and other

4    types of fraud potentially being carried out as a result of

5    this massive information becoming public.  Are you saying

6    that is not a legitimate concern?

7              MR. CASSADA:  We don't think so, Your Honor.  We

8    don't believe there was any evidence at all offered on those

9    points.  And we don't believe that the kind of information

10   that these 2019 statements contain are the kind of information

11   that any Court has ever found would subject a person to the

12   possibility of theft or fraud.

13             In fact, Bankruptcy Rule 9037 identifies the

14   kind of information that subjects persons to potential

15   product ID theft or, excuse me, ID theft.  That includes

16   things like Social Security numbers, financial account

17   information, taxpayer identification numbers.  These are

18   enumerated in Rule 9037:  date of birth and for minors, the

19   names of minors.  But that information is protected because

20   of the recognition that that kind of information can be

21   used by persons who steal an identity, but certainly not

22   this kind of information.

23             If you look at any bankruptcy case, you have

24   seen a long list of creditors, financial creditors, tort

25   claims, long lists that identify the claimants, their

1    addresses, and the nature of their injuries.  That appears

2    in literally every bankruptcy case.  And there is no one who

3    offered before the court any evidence that providing that

4    same information for these claimants would subject them to

5    a risk of identity theft.

6            THE COURT:  Now, didn't Judge Farnan already,

7    in one of these cases, say that the Bankruptcy Court was

8    properly concerned with issues of privacy and possibly

9    identity theft and carefully weighed those interests against

10   the right of access that you claim you have?

11           MR. CASSADA:  No, I don't believe that is what

12   the Judge was saying.  I think the Judge was saying that

13   the Court was proper in deciding to keep this off of the

14   electronic docket and to require people to ask for it.  But

15   all the courts who reviewed this, both in the *Kaiser* case

16   and in the Pittsburgh Corning case, recognize that no

17   request had actually been filed and, therefore, the Court

18   had not denied any relief or made any findings whether

19   someone seeking public access or any other kind of access

20   should not be entitled to get this information.  I believe

21   maybe the Court did mention privacy right but relying on

22   those strictly in upholding a court's decision to keep them

23   off the electronic docket, not to avoid access to a person

24   who requested public access.

25           THE COURT:  In this appeal, you are not

1    challenging the decision to keep that information off the

2    electronic docket; correct?

3                    MR. CASSADA:  We have not challenged that, Your

4    Honor.

5                    THE COURT:  And you are not challenging the

6    requirement that you have to file a motion; correct?

7                    MR. CASSADA:  We have not challenged that.  We

8    have filed a motion.  We have asked for public access and we

9    are challenging the order denying.

10                   THE COURT:  Wasn't it implicit, at least

11   implicit in the earlier order that would require a motion in

12   order to get access to the exhibits, that there would need

13   to be some showing, some reason, some proper purpose in

14   order to get the access?

15                   MR. CASSADA:  The order, Your Honor, didn't say

16   anything about what would have to be shown.

17                   THE COURT:  Well, that is true.  But isn't it at

18   least implicit?  Why else would the Bankruptcy Court require

19   a motion?

20                   MR. CASSADA:  The Bankruptcy Court required a

21   motion so that presumably so that the Court could determine

22   whether a person asking for the information was entitled to

23   it.  And in these decisions, I mean, in both decisions in

24   both courts, the Court said that the insurers had not yet

25   requested public access and, therefore, there was no basis

1    to determine whether there had been, there would be a denial

2    of public access.  And they were explicit, as I have shown

3    you in the *Pittsburgh Corning* case, that once that motion

4    is filed, then the Court can make that finding and a

5    determination.

6              THE COURT:  Right, I understand all that.  I'm

7    coming back to really whether I need to reach the issue of

8    proper purpose or not.  Because as I understand it, your

9    position is you have a proper purpose but you don't need

10   one.  You are here on behalf the public and any member of

11   the public should have access to these materials; correct?

12             MR. CASSADA:  That is correct.

13             THE COURT:  That is your position?  So I'm

14   trying to understand how I square that with what arguably

15   you acknowledged is the law of the case here, which is that

16   a motion is required in this particular case in order to get

17   access.  So maybe you were right prior to entry of the 2019

18   order that any member of the public should be able to walk

19   in and see this.  But in this case, you have an order that

20   was approved by the Third circuit and not appealed by you

21   and not at issue in this appeal which says you need to file

22   a motion in order to get access.

23             So given that, don't I have to assess your

24   motion and the purposes for which you are seeking access?

25             MR. CASSADA:  I don't think so, Your Honor.

1    In fact, I think that would violate the law of the case.

2    The courts on review said this does nothing but set up a

3    procedure; it hasn't affected the right of public access in

4    any way; and that any public access motion, when filed,

5    would  be considered on its merits.

6              THE COURT:  All right.  Well, then I come back

7    to what are the merits other than it's on a piece of paper

8    and you signed it?  I mean implicitly, wasn't that setting

9    up and approving the process that required an applicant or a

10   movant to make some sort of showing that the Court would

11   have to assess on the merits?

12             MR. CASSADA:  Yes.  The showing is, a motion

13   for public access, to tee up that issue.  That's what the

14   Court said.  I'm not ruling on any of these issues.  I'm not

15   ruling on public access.  I'm just getting the documents

16   filed and then we'll decide whether people were entitled to

17   access to it.  The order said nothing more than that.  It

18   didn't say that -- it said that the clerk shall not -- this

19   is at the bottom, Your Honor, of page 3.

20             It is further ordered that each entity filing a

21   2019 statement shall serve a copy of the 2019 statement that

22   includes all exhibits on CDs on the debtor and the United

23   States trustee, who shall keep such exhibits confidential

24   and shall not release the exhibits to any party without

25   further Order of the Court.

1          So those are actually addressing exhibits in the

2    hands of the debtor and the United States Trustee, not the

3    clerk.

4          There is nothing in the order that suggests that

5    she has done anything at all to curtail public right of

6    access, and that was the basis for the decisions affirming

7    the order.  That they were not ripe because they hadn't done

8    anything at all to the rights of public access.

9          Then the Bankruptcy Court, when it entered the

10   order, it acknowledged the same thing.  The Judge said, and

11   I'm quoting language in the *Pittsburgh Corning* opinion

12   itself.  She said, "I think there is a certain level of

13   public access that can be provided and maybe it's for

14   another day."

15          So the order did nothing but leave for another

16   day any consideration of public access.

17          THE COURT:  In order for you to win this appeal,

18   do I have to say that Judge Fitzgerald abused her discretion?

19          MR. CASSADA:  I think that Judge Fitzgerald

20   applied the wrong standard.  I think that is what you have

21   to find.  That she failed to articulate the findings

22   necessary to override the presumptive right of access.  She

23   failed to apply the *Goldstein* factors.  In doing so, I think

24   the law is clear that when a Court that has discretion to do

25   something, applies the wrong standard, that is an abuse of

1    discretion.  In this case, that is what the Court did, just

2    like the Court in the *Goldstein* case.  That Court applied

3    the wrong standard and was reversed.  That has happened a

4    lot on public access motions.

5             THE COURT:  I think it's Armstrong but certainly

6    one of the appellees contends the Court lacks subject matter

7    jurisdiction.  Can you respond to that argument?

8             MR. CASSADA:  Yes, Your Honor.  We believe

9    that is incorrect for a number of reasons.  But, most

10   importantly, these are documents in the Court's files.  A

11   Court always had at least supervisory jurisdiction over

12   documents that are part of the case file.

13            In the cases we cited, the Third Circuit has

14   said this jurisdiction has the ability to entertain a motion

15   for access long after a case is settled and closed.  There

16   particularly has been discussion on that in the *Pansy* case

17   and the *Leucadia* case, both Third Circuit decisions

18   addressing that point directly.

19            So we would think that the Court continues to

20   have jurisdiction over documents filed in its case.

21            THE COURT:  You contend, you make an argument

22   over 107(c) or that 107(c), section 107(c) is not applicable

23   because it came after the entry of these orders.  Is that an

24   argument you made below and is that one that I can reach?

25            MR. CASSADA:  I can't remember exactly what

1    was made below but, below, we were proceeding on the

2    understanding from the Court that it reviewed the order,

3    that she hadn't made any findings with respect to public

4    access.  And then in the court order itself, the Court

5    suggested that findings were made on the basis of 107(c)

6    previously when the original orders were entered.  So I

7    think it's fair for us to point out that clearly didn't

8    happen.

9              There is nothing in the record to suggest that

10    those findings were made.  The courts who reviewed those

11    certainly didn't recognize and upheld the 2019 orders on the

12    basis that there were no such findings.  There was nothing

13    that curtailed a right of public access.

14              So for the Court to say later that those

15    findings or suggest that those findings were made, I think

16    it is completely proper for Garlock to point out not only

17    were those findings not made, they couldn't have been made

18    because 107(c) was not part of Code Section 107 at the time.

19              THE COURT:  One more question before I have

20    you sit down so you will have a little time left for your

21    rebuttal.  Tell me what the status is of your bankruptcy and

22    why I should not draw conclusions that the appellees want me

23    to draw.  That, as I understand it, the Judge there did not

24    delay your estimation proceeding in which you want to view

25    these documents, and you have indicated I guess she has

1    denied some discovery requests.  Shouldn't I weigh all that

2    against you in deciding your appeal here?

3              MR. CASSADA:  No, that has nothing to do with

4    Garlock's right to public access in this court.  So, no, I

5    don't -- I don't believe the Court should consider that.

6    There have been recent orders where the Court has actually

7    reversed prior discovery orders and admitted on the record

8    that the Court had misunderstood the case and had balanced

9    Garlock's need for the information in an improper way.

10             So the Court reversed itself and said that

11   Garlock is entitled to information, including information

12   about what claims were filed by Garlock's past settled

13   claimants against trusts.  So the Court has reversed itself

14   in those positions and said that is relevant information and

15   has approved requests that go out to claimants and subpoenas

16   to bankruptcy trusts for that kind of information, which is

17   very much like the information we're citing here.

18             So it's improper for the Court to begin with

19   to consider that type of evidence or information from a

20   public access motion.  But if the Court were to consider it,

21   then the Court should know that the Judge in our case has a

22   different view.

23             THE COURT:  And has your estimation proceeding

24   been scheduled?

25             MR. CASSADA:  Yes, it was originally scheduled

1   to take place on December 3rd.  Although the scheduling

2   order has not been entered, the parties have agreed now

3   that the trial should begin on March 4th.  And we have

4   also agreed to certain milestones that happen between then,

5   including a critical day in mid-September by which the

6   parties experts will file their expert reports estimating

7   Garlock's aggregate liability for claim.  Those experts will

8   rely on evidence that Garlock is able to provide relative

9   to claims, including the 2019 statements in this case.

10          So we have an expert deadline coming up and very

11  much would like to and believe we need the 2019 exhibits in

12  order for our experts to take that information into account

13  in their expert opinion and in their reports.

14          THE COURT:  Okay.  Thank you.

15          MR. CASSADA:  Thank you, Your Honor.

16          THE COURT:  You will have just under 20 minutes

17  left, but we will hear from the appellees first.

18          MR. CASSADA:  Okay.

19          MS. RAMSEY:  Good morning again, Your Honor.

20  Natalie Ramsey on behalf of certain law firms representing

21  asbestos claimants in the nine Delaware bankruptcy cases

22  that are the subject of this appeal.

23          Your Honor, it would be helpful I think to the

24  Court for us to take a step back and appreciate the context.

25  It seems from the Court's questions directed to Mr. Cassada

1    that the Court has a fairly good grasp of the unique nature

2    of asbestos bankruptcy cases and the purpose of the 2019s in

3    general.

4              But I think that part of what may be being lost in

5    the presentation by the appellant is why the term "creditor"

6    is a little bit fuzzier in an asbestos bankruptcy case.  In

7    an asbestos case, Your Honor, you have a circumstance where

8    you have a population that has been exposed to asbestos.  That

9    asbestos disease may not manifest for as long as 50 years, and

10   so you have a number of individuals who are being diagnosed on

11   an ongoing basis and you have a fairly substantial population

12   of individuals who are going to be diagnosed in the future.

13             As a result of that, when the *John Manville* case

14   filed back in the 80s and the Court was faced with the issue

15   of how to deal with a significant mass tort of this nature

16   and in the context of a bankruptcy, it was required to

17   exercise great creativity in coming up with unique

18   provisions and molding Bankruptcy Code provisions under the

19   general equitable powers of a Bankruptcy Court in order to

20   fit the unique needs of this type of case.  And it really

21   truly is unique.

22             There is a specific provision in the code now,

23   Section 524(g), that specifically addresses asbestos cases.

24   And it is the reason, in fact, that most of the companies

25   that have since sought bankruptcy protection have gone into

1    bankruptcy.

2              There are other sections of the code that have

3    been molded because the Bankruptcy Code really was not

4    designed to address this unique type of case.  For example,

5    Section 105(a), which is the Court's general equitable

6    power, is used more frequently and almost as a point of

7    regularity in asbestos cases to provide protection almost

8    immediately after a debtor corporation files to shield a

9    bunch of affiliated entities.

10             The purpose of that is to protect those entities

11    from being sued derivatively for the asbestos claims in the

12    hope of reaching an aggregate settlement that will fund a

13    trust, that will pay both the current and the future

14    asbestos claimants.

15             As a result of that, and the unique challenges,

16    you also have a molding of the administrative provisions of

17    the code.  Rule 2019 is an example of that.

18             In most cases, a Rule 2019 statement in a

19    commercial case, for example, a Rule 2019 statement is

20    going to contain the names and addresses of creditors who

21    appear on the debtor's bankruptcy schedules and who are

22    taking active roles in the case.  So when an attorney

23    files that statement, the purposes of the 2019 is so that

24    all parties in the case can know whether or not there are

25    conflicts, all parties can assess what the motivations might

1    be of different parties that are represented by the same

2    counsel, taking various positions in the case.

3              In an asbestos context, the problem that you

4    run into is that you have a very large number of different

5    categories of claims.  You will have a population of

6    claimants who are listed on the 2019 statements who have

7    sued the debtor corporation before bankruptcy.  And those

8    creditors are in fact listed on the debtor's bankruptcy

9    schedules along with all of the information that the

10   appellant has indicated they're interested in:  the address

11   and the type of claim and the amount that they're seeking,

12   if it's known.  Often it's unliquidated in these cases.  But

13   you have the disclosure already on the bankruptcy schedules,

14   and that information is in the public domain.

15             You have another group of claimants, however,

16   who may have been relatively recently diagnosed.  Maybe they

17   are creditors who are just in the process or more accurately

18   asbestos victims who know they have an asbestos disease.

19   What they don't know is the entirety of which defendants

20   they may have been exposed to asbestos by and which of those

21   defendants they may have a right to sue.

22             So when an asbestos case is filed, the debtor

23   automatically gets the benefit of an automatic stay.  That

24   cuts off all discovery by the asbestos victims, and they are

25   no longer able to assess the possibility or go through the

1    normal discovery process to assess whether or not they have

2    a claim against a particular defendant.

3          So when these cases come along, you have the

4    terminology "creditor" and you have a creditor under the

5    Bankruptcy Code being defined as an entity with a claim, and

6    a claim is any claim that has a nexus that is prepetition.

7    So for an asbestos creditor, to the extent that they were

8    exposed to the asbestos, which all of these people with

9    asbestos injury would have been, before the filing of the

10   case, they could potentially have a claim.  And unless they

11   ruled out the possibility of that claim, as the law firm,

12   the lawyers are in a position of determining whether or

13   not they are going to list these individuals under what was

14   Judge Fitzgerald's clear instruction that anyone who ever

15   might take action in the case or in the future against a

16   trust should be listed on the schedule.

17         So these schedules were necessarily overinclusive.

18   And because many of those people might never take an action

19   in the case, might determine they never even had a claim

20   against this entity, might never make a claim against the

21   trust, we contend that information of those individuals,

22   even the fact of their illness, even the fact of their

23   relationship with counsel, is entitled to a heightened level

24   of protection.

25         That was the shared understanding that the

1    bar had and that the Court had when these 2019 orders

2    were entered in the fashion that they were.  And the Court

3    ordered that the private personal information, including

4    the identities for those claimants whose information was not

5    already in the public domain, was to be put on a disk and

6    submitted to the Court.

7              THE COURT:  Are you saying there is something

8    inconsistent between Rule 2019 and what Judge Fitzgerald

9    ordered in her 2019 order?

10             MS. RAMSEY:  No.  To the contrary, Your Honor.

11             THE COURT:  So would there be that heightened

12   protection just under the rule absent her order?

13             MS. RAMSEY:  Under the rule, Your Honor, the rule

14   needed to be molded here.  I'm not saying it's inconsistent.

15   I think it is entirely consistent.  But I think it is a

16   square peg in a round hole.  It's a unique accommodation to

17   the circumstances that happen to be in this case.  The case

18   law was pretty clear that Rule 2019 could be molded.  It had

19   been molded in other circumstances.

20             THE COURT:  You are saying relevant to today's

21   dispute, one of the ways she molded it was to rachet up the

22   expectation of privacy of the claimant's creditors, whatever

23   we want to call them?

24             MS. RAMSEY:  Yes, Your Honor.  The asbestos

25   victims, I guess, is the best terminology at this point,

1   because it is not clear whether they -- it is clear they

2   have a disease.  What is not clear is whether they have a

3   claim against.

4              THE COURT:  So why should I not conclude that?

5   Not that I have to because nobody is appealing it.  But maybe

6   that was a proper exercise of discretion, the racheting up of

7   the protection, and that she did it by requiring the separate

8   filing or submission of the CDs and putting off for another

9   day the question that now is here, which is, well, okay, now

10  that those materials are over in the courthouse, who gets

11  access to them and on what basis?

12             MS. RAMSEY:  Your Honor, I think on the

13  procedures order, we have had two levels of review.  That

14  procedure was reviewed in *Kaiser*, it was reviewed again in

15  *Pittsburgh Corning*.  Both of those courts concluded that the

16  procedure was entirely appropriate:  The *Kaiser* court very

17  expressly.  The *Pittsburgh Corning* court more expressly

18  on the District Court level and implicitly in the Third

19  Circuit.

20             The issue of who gets access which is before the

21  court, though, requires I think an understanding of what the

22  information is and what its use was and, to some extent,

23  where the court started before, which is whether this is a

24  public record in the first instance.

25             While we recognize that the CDs are maintained

1    by the Clerk of the Court, the unique nature of what this

2    procedure envisioned, it never envisioned this information

3    to be public.  It never envisioned that this information

4    was going to be readily accessible.  It was only to be

5    accessible for a proper purpose.

6              It clearly was implicit.  And that was, in the

7    judge's mind, because she had said so in connection with her

8    rulings on the motions that have been filed by Garlock, it

9    was her intention to assess whether or not any motion was

10   appropriate with respect to the disclosures that were in

11   that, and whether the use of that information was going to

12   be appropriate.

13             The difficulty with assessing whether to, in a

14   bankruptcy context, grant a right of public access is that

15   even though the CDs were a unique circumstance, I'm not

16   aware of any other order that has been entered in any case,

17   any other type of case where you have information that is

18   submitted but is not -- there is no evidence that this

19   information was ever reviewed.  There is nothing in the

20   record that indicates the Court ever looked at this

21   information, that there has ever been any determinations

22   with respect to the exhibits themselves.  The issues that

23   have been presented have been ones of whether or not the

24   procedure was appropriate and whether those exhibits could

25   be accessed.

1           So our position, first of all, is that we do

2     think that the unique nature of these exhibits call into

3     substantial question whether they are a judicial record at

4     all.  But if the Court were to determine that they are a

5     judicial record, then we would advocate, as we did below,

6     that you have a continuum here of the presumption of public

7     access that applies, and the presumption applies much more

8     significantly to public records that have a meaningful part

9     of the process, that are meaningful for the Court in the

10    rulings that they issue, in the decisions that are made in

11    the course of a bankruptcy case.

12          Here, you have records that have -- as far as

13    the record, it is clear, and Garlock has had an opportunity

14    to develop this record, there is nothing in this record that

15    demonstrates that these exhibits were used for any purpose.

16    They were put on reserve.  So if anyone had a question at

17    any time about the authority of counsel to represent a given

18    person, that they could look to those exhibits and make a

19    determination as to whether or not that disclosure had been

20    made.

21          THE COURT:  Well, the argument from Garlock

22    today was that they were used or at least I guess usable in

23    monitoring the balloting process.  Is that incorrect?

24          MS. RAMSEY:  No, Your Honor.  I believe they

25    could have been usable.  I believe that had a party sought

1    to use them for that purpose.  But there is no evidence

2    in the record that, in fact, they were ever used.  They

3    may have been there -- they were there for the purpose of

4    ensuring that when you got to the point of balloting and

5    other parts in the case where you had in fact now creditors

6    coming forward and acting, and their identities were on the

7    public domain.  They were at that point known.  And,

8          That is another important distinction that I think

9    that the appellant sort of brushes over, which is, at the

10   point in time had a creditor sought to take an action, had

11   they sought to file a motion in the case, had they sought to

12   object to a plan, had they sought to file a ballot, they are

13   now on the public record.  Their identities are known.

14         It's the great mass of individuals who never

15   acted, who may or may not have a claim that are unknown.

16   And it's that group of folks that we contend deserves the

17   heightened protection and calls into question about whether

18   or not there is any legitimate purpose for those folks to

19   have been named.

20         I think it's important also to point out that

21   Rule 2019 has changed now.  The new Rule 2019 would not

22   require the disclosure of passive representation.  So now a

23   law firm, even in an asbestos bankruptcy case, would not

24   have to disclose any creditor as to which it was not taking

25   an active role in the case in representing.  So the rule,

1    it now is much more in conformance with the concept of what

2    makes sense.  Because what makes sense in a bankruptcy case,

3    and in the right of public disclosure, the policy concerns,

4    are who is acting?  Who is taking action?  Who is

5    participating?  What are they saying?

6              That information has always been known.  That is

7    not different in an asbestos case than any other case.  Rule

8    2019 was never intended to reach the kind of circumstance

9    you have here of widespread passive participation.  And that

10   is clear by the amendments.

11             THE COURT:  Well, it is certainly interesting

12   that the rule changed.  But the rule was what the rule was

13   at the time these orders were entered.  And further, as

14   you already told me, you don't believe Judge Fitzgerald

15   committed any abuse of discretion in her 2019 order.  So

16   she molded the rule as it was to your cases here.  Nobody

17   is contending that was error or abuse of discretion.  So

18   I'm not sure what relevance the subsequent change in the

19   rule has.

20             MS. RAMSEY:  Well, I think the relevance, Your

21   Honor, is to support what Judge Fitzgerald did.  It's very

22   consistent because Judge Fitzgerald was never -- her order

23   was never designed to maintain in confidence the identity

24   of individuals who were taking an active role in the case.

25             This gets to the policy purposes of a right of

1    public access, if that is really what the appellant has

2    raised.  If it is not subterfuge for a different type of

3    motion, either discovery in their bankruptcy case or an end

4    runaround, a motion for access under the procedures order

5    that Judge Fitzgerald put into place.

6               If you treat it as a motion for right of access,

7    I think the amendment to the rule is significant because the

8    policy provisions of access are, as I said, so that everyone

9    knows what is happening.  So it's transparent as to who is

10   acting, why decisions are being made.  These 2019 exhibits

11   that were molded by Judge Fitzgerald beyond CDs, out in the

12   public domain, were molded not to conceal that information

13   at all.  That information is still known, was always known,

14   and now, under Rule 2019, would be very consistent with a

15   statement that we identify only those individuals.  And that

16   information is still there.

17              So my point is that the Judge Fitzgerald's

18   determination was consistent with the notion that a passive

19   representation in a case was not a matter of public interest.

20              THE COURT:  Let's come back to your argument

21   whether the exhibits were filed or merely submitted or

22   something else.  That is not an argument that any of you

23   made below; correct?

24              MS. RAMSEY:  That's correct.  We made the

25   continuum argument below.  We did not make the argument that

1    they were not on the public record below.

2              THE COURT:  So in part, as a consequence,

3    there is no finding by Judge Fitzgerald as to whether these

4    exhibits were filed or merely submitted; correct?

5              MS. RAMSEY:  That's correct, Your Honor.

6              THE COURT:  So where does that leave me, sitting

7    as an appellate judge?  What do I do with that?

8              MS. RAMSEY:  Well, Your Honor, to the extent

9    that that would be case dispositive, I believe that the

10   Court would need to remand that to the Bankruptcy Court

11   for further determination.  We don't believe that we need

12   to rely on that or that that necessarily needs to be the

13   dispositive issue in this case.

14             We believe that we prevail on other grounds.

15   Specifically, and primarily, the two that we were just talking

16   about:  the continuum and the fact that the presumption is

17   much weaker with respect to records of this type combined

18   with the area of inquiry that the Court had explored with

19   appellate counsel, which is the purpose for which the

20   information is sought and the balancing of those factors in

21   the determination.

22             THE COURT:  We'll come back in a moment.  Let's

23   assume for the moment I think it's dispositive.  Why can't I

24   make a determination on this record whether they are filed

25   or whether they are not filed?

1          MS. RAMSEY:  I think the Court could make that

2     determination, Your Honor.

3          THE COURT:  And if I do make that determination,

4     help me understand why I shouldn't put great weight on, for

5     instance, the statements of the Judge in the Western

6     District that Mr. Cassada showed us which seemed to infer

7     that they were filed?

8          MS. RAMSEY:  Your Honor, I don't believe that

9     issue -- of course, that would be dicta.  That issue was not

10    presented to Judge Conti.  But to the extent that it is --

11    I think it is a close determination here in the sense these

12    records are in fact in the court record.

13          The reason that we have contended that they're not

14    a judicial record and I think that the Court could distinguish th

15    purposes of the language in the *Kaiser* decision

16    and the *Pittsburgh Corning* decision from the determination

17    that they're not a public record, the reason we have contended

18    that this is neither fish nor foul is something a little bit

19    different and, therefore, not a judicial record is precisely

20    because it was never intended to be made available except

21    for a very limited purpose of confirming representation,

22    which as far as the record reflects, was never accessed for

23    that purpose.

24          THE COURT:  And for that contention, you are

25    relying on Judge Fitzgerald's explanation in the order or

1    the opinion that is now the subject of this appeal; correct?

2                    MS. RAMSEY:  That's correct, Your Honor.

3                    THE COURT:  There is nothing contemporaneous you

4    can point to with the entry of the 2019 order that indicates

5    that that was the limited purpose for which access would be

6    allowed?

7                    MS. RAMSEY:  Your Honor, I think that there was

8    language that was quoted.  And my recollection is unclear

9    right now.  It is either the *Kaiser* or *Pittsburgh Corning*

10   case.

11                   THE COURT:  Okay.

12                   MS. RAMSEY:  There was language quoted from the

13   courts, and maybe both of them.  I recall right now from the

14   *Owens Corning* transcript when that 2019 order was entered,

15   where the Court did indicate.

16                   (Counsel confer.)

17                   THE COURT:  You may be getting some assistance.

18                   MS. RAMSEY:  I am getting some assistance, Your

19   Honor.

20                   If I could read from the Court's decision in

21   *Pittsburgh Corning*.

22                   The Judge said:  Anyone seeking access to the

23   Rule 2019 exhibits "telling me why you want it, it seems to

24   me that requiring somebody to show me how the information is

25   necessary, relevant, whatever term you wish to choose, in a

1    motion is not violating anybody's substantive rights."

2              That is a quote I think that came out of the

3    *Pittsburgh Corning* decision, Your Honor, at 2005 Westlaw

4    6128987.

5              The point is that the entire purpose of 2019 as

6    known by and acknowledged by Judge Fitzgerald and as noted

7    by Judge Farnan, it was for the purpose of administration in

8    a case to know who is acting on behalf of creditors when you

9    have planned negotiations and those types of actions going on.

10             So you have 2019 purposes that were clear to the

11   Court at the time, and the issue is an issue of representation.

12             And I wanted to get to why that draws back to

13   the examples that Mr. Cassada put on the Elmo for the Court

14   with respect to the language used by counsel when filing

15   these 2019s.

16             Your Honor, I think, again, what you have here is

17   you have nonbankruptcy counsel copying a rule which was not

18   ever designed or contemplated to deal with this particular set

19   of circumstances and included unfortunate wording.

20             But what 2019 is designed to verify, and this

21   also was recognized by Judge Fitzgerald below, is the fact of

22   representation.  It is not intended to be a representation by

23   counsel of the merits of their client's claim.  It couldn't

24   possibly be.  What lawyer would ever do that?  That never

25   happens.

1          It's a representation that the individuals who

2     are listed on the exhibit are represented by counsel.  And

3     despite the unfortunate fact that some of the law firms were

4     not sufficiently self-protective in the language that they

5     used, I think the Bankruptcy Court has clearly recognized

6     that the bar and the Court both understood that the 2019

7     exhibits were going to contain a number of individuals who

8     didn't have claims.  The Court said that directly.

9          THE COURT:  So why aren't those issues that go

10    to the weight, if any, of these exhibits and those will be

11    battles to be fought presumably in the Bankruptcy Court in

12    North Carolina or in the state tort actions all around the

13    country?

14         MS. RAMSEY:  Well, I think that is where you

15    get into the balancing factors under *Pansy,* whether you're

16    viewing this as a motion for access under the Court's

17    procedures or whether you are viewing this as a motion for

18    right of public access.

19         Here, you have a combination of competing

20    interests of the privacy interests of individuals who may

21    not yet have disclosed the fact of their illness, the fact

22    of their representation, who may not have claims, who may

23    not, as Judge Fitzgerald pointed out, even know there are

24    these 2019 statements verus the improper purpose which is

25    clearly set forth.

1          Garlock has been very forthcoming about their

2     purposes in seeking to use this information and it is a

3     misuse of the information.  It's a circumstance where you

4     would have innocent third parties who are victims who did

5     not choose -- they didn't choose to deal with this entity.

6     They didn't choose to develop asbestos disease.  They

7     haven't chosen to act.  Had they chosen to act, their

8     identities are known.

9          You have these individuals who have contacted

10    counsel because they have an asbestos disease.  For those

11    individuals, what Garlock has sought to do is to accuse

12    those individuals of fraud and to accuse the law firms

13    that represent them of fraud.  And,

14          If you look at it from the perspective of a law

15    firm, a law firm is in a position of -- it's in a terrible

16    dilemma when you are in this situation.  If the Court were

17    to let this litigation go forward, a law firm is charged

18    with taking the action to protect, as best as it can, the

19    interest of its clients and to preserve the client's ability

20    to continue to develop their claim.

21          So if they don't include that client, they

22    could be criticized for malpractice.  If they do include

23    the client merely for the purpose of preserving a right to

24    act later, if that is appropriate, then now Garlock seeks

25    to accuse them of fraud.  It's a no win situation.  It's an

1    unfair situation.

2              THE COURT:  I hear you.  I might even be

3    sympathetic.  But wasn't the time to make that argument

4    prior to the entry of the Rule 2019 order which you told me

5    appropriately molded the rules to this context and is not

6    an abuse of discretion in any way on appeal in front of me?

7              MS. RAMSEY:  I believe there were a number of --

8    and Mr. Esserman can address this a little bit further

9    because I believe he was present for many of the original

10   hearings before Judge Fitzgerald on the fashioning of the

11   2019.

12             There were significant hearings on what the

13   2019s would look like.  And as part of that process, the

14   bar and the Court -- and this is evident I think from Judge

15   Fitzgerald's opinion.  The bar and the Court had the same

16   understanding about what information was to be contained and

17   how it was to be protected.  And the bar had confidence that

18   under the procedures order that had been put in place by

19   Judge Fitzgerald that Judge Fitzgerald would not make this

20   information accessible except for a proper and legitimate

21   purpose of representation in the particular case in which

22   the order was entered.

23             Understanding the unique and special nature of

24   this; and this is really a very, very limited field; and a

25   determination that this is not a judicial record, a

1    determination that the improper purpose here would deny

2    Garlock access in this unique circumstance is not going to

3    have wide ranging application outside of an asbestos case.

4              But the Judge here was very much in tune with

5    the needs of this.  And I should step back just a second,

6    too.

7              The Court is probably aware of this.  But Judge

8    Fitzgerald has been presiding over asbestos cases since

9    2000, and she has extensive experience in these cases.  And

10   when the Third Circuit decided in November of 2001, when

11   the big five cases were before the Court, including *W.R.*

12   *Grace* and *USG* and *Armstrong*, *Federal Mogul*, to put Judge

13   Wolin in charge of all of those cases for purposes of

14   ensuring consistency in the administration, Judge Wolin

15   relied largely on Judge Fitzgerald to put in place these

16   types of administrative protections.  And as a result, she

17   spent a significant amount of time hearing the bar about

18   these types of concerns, and she was very receptive and

19   responsive.

20             The difficulty here, Your Honor, is you have

21   an effort, we believe, really to do an end runaround the

22   protections that the Court had put into place.  And we think

23   it's unsuccessful because we still think, even under the

24   *Pansy* factors, that Garlock walks away empty-handed.  But

25   you had Garlock in *Pittsburgh Corning* go through this once

1    before and go through the procedure that the Court had put

2    into place and there the Court denied Garlock's right for

3    access finding in proper purpose.

4           Similarly, we believe that same analysis of

5    improper purpose is applicable under the *Pansy* standards

6    where you're looking at whether the information is being

7    sought for an appropriate purpose or an improper purpose.

8           As the Court observed, we don't have to guess

9    at what Garlock's intention is with respect to this

10   information.  It doesn't deny that its purpose is to

11   conduct a fishing expedition for claims of fraud, and that

12   it intends to make those allegations.

13          THE COURT:  It also says they want to use it for

14   an estimation proceeding.  How is that improper?

15          MS. RAMSEY:  It's improper because it is a

16   misuse, Your Honor.  That was the other determination

17   that the Judge found -- that Judge Fitzgerald found.  The

18   information is not helpful to Garlock.  And this is a

19   Bankruptcy Judge who has conducted innumerable estimation

20   hearings that is making this determination.  The Court found

21   it was a misuse of the 2019s and this is a factual finding

22   of the Court.

23          THE COURT:  There is something I want you to

24   clear up with you.  When you say the *Pittsburgh Corning* case

25   found that Garlock is seeking the information for an

1    improper purpose, you mean that in the orders that are being

2    appealed to me right now?

3              MS. RAMSEY:  No, Your Honor.  I mean in the

4    effort that Garlock made in -- I may have left my cheat

5    sheet on this at counsel table.

6              Before Garlock sought to access this information

7    on a right of public access, Garlock had filed in the

8    *Pittsburgh Corning* case a motion under Judge Fitzgerald's

9    procedures seeking -- a year before these cases were

10   commenced, Garlock had filed a motion in the *Pittsburgh*

11   *Corning* case seeking to follow the Court's procedures for

12   purposes of assessing the information that it was seeking.

13             Judge Fitzgerald at that time determined that

14   Garlock could not have access because it was seeking the

15   information for an improper purpose.

16             One, because it was seeking to go on a far-flung,

17   far-reaching expedition in search of fraud, which couldn't be,

18   for which 2019 exhibits couldn't be used in the first place

19   because they are not a list of individuals who have claims.

20   They're not a list of creditors.  They are something different

21   than that.  They are a statement by counsel.  And it was for

22   that reason the Court denied it.

23             Garlock didn't appeal that determination by the

24   Bankruptcy Court.  Instead, about ten months later, it came

25   back with these motions for right of public access that are

1    before the Court today.

2              THE COURT:  Come back.  You were starting to

3    tell me something about how individuals end up on these 2019

4    exhibits.  I think you said at a minimum, each of them had

5    to contact counsel.  Isn't that correct?

6              MS. RAMSEY:  That is correct.

7              THE COURT:  Did each of them at least have to

8    retain counsel?

9              MS. RAMSEY:  Yes, Your Honor.  They would have

10   retained counsel.

11             THE COURT:  And yet you're arguing, I think I

12   heard you say, they may not know that they ended up on the

13   exhibits; correct?

14             MS. RAMSEY:  That is correct, Your Honor.  That

15   was something that the Court said in any event.  And the

16   reason goes to the nature of the terms on which they retained

17   counsel.

18             THE COURT:  Okay.  But you acknowledge they had

19   to do something at least affirmatively?

20             MS. RAMSEY:  Yes, Your Honor.  They had

21   retained counsel to represent them in connection with their

22   asbestos disease.  But that is the extent to which the

23   population that we're worrying about and discussing today

24   would have taken any affirmative action against the

25   particular company, bankrupt company that was in the

1    bankruptcy proceeding.

2              I think, Your Honor, the purposes that Garlock

3    is seeking would unfairly further penalize these asbestos

4    victims.  These are, again, to bring it back just for a

5    moment as to who these people are, these are people who are

6    sick.  Many will have died, so it's their families.  It's

7    people who are living, are elderly because of the latency

8    period and they already have an asbestos disease.

9              To unfairly inflict pain on third parties that a

10   court found recently are entitled to protection, and that is

11   language from the *Criden I* case, 648 F.2d 814 (8th Circuit

12   1981), would be inconsistent with the balancing factors or

13   would be inconsistent with access, with Garlock's claim of

14   access, and it's part of the balancing factors that *Pansy* says

15   the Court should analyze in determining whether or not the

16   information should be made available.

17             THE COURT:  Is the *Pansy* balancing, if I reach

18   it, any different for those that did not object to Garlock's

19   request for access?

20             MS. RAMSEY:  No, Your Honor.  We believe that

21   with respect to those that did not object, the rule is the

22   same.  The exhibits are confidential.  The purposes of the

23   protections are confidential.  There is no distinction to

24   be made on that score with respect to whether or not the

25   information is made available, we believe, depending upon

1     whether the other firms rose to object specifically to this.

2           THE COURT:  You have about 25 minutes left

3     altogether for your side.

4           MS. RAMSEY:  I'm going to rush through the rest

5     of my presentation so that some of my co-counsel can have a

6     say here, Your Honor.

7           But just quickly to go through the rest of the

8     *Pansy* factors, again, reviewing the *Pansy* factors, I think

9     the policy considerations are equally applicable if the

10    Court is assessing them under a procedures motion.

11          The prevention of embarrassment and whether the

12    embarrassment could be particularly serious is another of

13    the balancing factors.  In *Crum & Crum*, the Court found that

14    is generally a non-monetized harm to an individual.  Again,

15    the fact of illness, the fact of representation, these are

16    facts that if already not in the public domain should be

17    subject to a very heightened level of protection.

18          With respect to reliance, Your Honor, I did

19    want to come back to that one more time, because it is very

20    important that the bar relied very heavily on the confident-

21    iality protections in not seeking further review of the

22    2019 orders that were entered by Judge Fitzgerald below

23    and in providing the detailed information with respect to

24    non-traditional creditors, with respect to asbestos victims

25    who may or they not be ultimately claimants in a case when

1    they made those disclosures.

2              With respect to the particularized harm that

3    would be suffered in addition to the privacy interests and

4    personal information of the kind of Social Security number

5    and identity theft type, you also have, as I have indicated,

6    the private personal medical condition and the attorney-

7    client relationship, to the extent that is not disclosed

8    also.

9              You also have, from the law firm's point of

10   view, a commercial interest in the retention agreements

11   which are part and parcel of these 2019 exhibits.

12             In conclusion, Your Honor, I would say we

13   believe that the Court was right and that Garlock's effort

14   to obtain these to misuse them is not consistent with any

15   policy consideration with respect to a right of public

16   access.  And it's not appropriate from a bankruptcy point of

17   view given the limited nature of 2019s.  Thank you.

18             THE COURT:  Okay.  Thank you.

19             MR. ESSERMAN:  Good morning Your Honor.  Sandy

20   Esserman on behalf of various law firms.

21             I think I want to spend a couple of minutes

22   sort of quoting Judge Fitzgerald on sort of her perspective

23   because I think it is important to the reviewing Court to

24   try to understand what was going through the mind of the

25   Bankruptcy Judge.

1            What Judge Fitzgerald said is a 2019 statement

2     is a statement by a lawyer; and it says that these people, I

3     represent in this case.  That's it.  It doesn't give you any

4     information about what evidence the clients had in support

5     of their claims, and it doesn't tell you whether the lawyer

6     actually is ultimately even going to file a claim in the

7     case or is going to file a ballot in the case.

8            So let's assume some lawyer has a list of

9     clients wanting to make sure that he doesn't get faulted for

10    being underinclusive, but he hasn't made any decision at all

11    as to whether those claimants will do anything in this case,

12    much less file a proof of claim or anything else.

13           Then the only decision the claimants have made,

14    the clients and the lawyer for those claimants, is whether

15    or not they had this case, whether they want to vote, and

16    that is in the ballot material.

17           So that is sort of how Judge Fitzgerald viewed

18    this horse by committee, if you will, this 2019 statement in

19    a mass tort case.  Because 2019 was not designed for a mass

20    tort case.

21           We litigated with Judge Fitzgerald and the

22    various debtors.  And I argued most of the appeals in the

23    Third Circuit appeal and in Judge Farnan's case as to what

24    was really meant, what was going on, what was intended.

25           Judge Fitzgerald thought she got it right, and

1    she did.  She tried to mold something that kind of really

2    wasn't appropriate necessarily for a mass tort situation.

3    And to say the firms relied on it, the whole litigation, the

4    whole record of the 2019s, which is pretty extensive, was

5    basically an agreed order with the Court and the debtors

6    and the parties who are participating at the time, the

7    creditors, and the Creditors Committee.  And,

8            What Judge Fitzgerald said at the end of this

9    sort of litigation -- and this is in our papers -- is "this

10   2019 order in my view does everything and probably more than

11   it needs to do.  It provides for protection of the parties'

12   rights to ask us this information by simply filing a motion

13   with this Court, telling me why you want it.  And I don't

14   think that is inappropriate.  The problem that the courts

15   wrestle with this electronic case filing is just that,

16   everything gets spread on the public docket and that is not

17   appropriate.  That is not what the electronic case filing

18   system was intended to do where privacy concerns are involved.

19   It is intended to make access to relevant information more

20   widely available to parties."

21           Which is very consistent with Judge Farnan, who

22   also concluded as to what was being done here.

23           So there is a question of what this really is.

24   What is behind the curtain, if anything, that everybody has

25   been fighting over for the past ten years?  I'm frankly not

1    sure what other than in fact fighting.

2         But be that as it may, I think that when you

3    look at this, Judge Fitzgerald tried to fashion a remedy

4    in this situation to give people protection, and give people

5    reliance on that order.  They did it, and they complied.

6         The filings were made.  Whether the electronic

7    -- whether the exhibits were filed of record or not, I

8    understand that there may be some issue, but I don't think

9    you even need to reach that issue as to whether or not these

10   are in fact intended to be filed records.

11        Although if Judge Fitzgerald understood that she

12   was opening this up to the public at large, to be put in

13   every newspaper in the country, my guess is that she would

14   say, whoa, that is not what I intended.  I intended someone

15   to come before me and tell me why they want this.

16        Garlock's argument is really quite simple.  It's

17   I want it because I want it.  That is really what it comes

18   down to.  It comes down to a situation where they think that

19   this is a court record, debate about that we understand, and

20   because it's a court record I get to have it.

21        And I may use it for some nasty purposes.

22   That's what they conceded in the trial court.  They didn't

23   say it was nasty.  They just say we've been robbed, and we

24   want to use it for that purpose.

25        But in essence what they're saying is we want it

1    because we want it, and there is no reason it should be kept

2    confidential because it is a court record.  That is really

3    what they're saying.

4            And, oh, by the way, you have got 107(c), but

5    it wasn't enacted at the time and it was only effective

6    post-2005 I believe and, therefore, you can't really rely on

7    the factors of 107(c) to give you any kind of protection.

8            The fact that 2019 has been amended to completely

9    eliminate most of these 2019 statements in exhibits filed

10   really doesn't matter either except, once again, if a court

11   would know that their order was going to be construed in a

12   different way, there are certain remedies that the Court might

13   take, such as expunging those documents.

14           Plus, 2019 does not require the filings that

15   were made here currently.  And there was no prospective

16   application of that rule.  It was a rule that was enacted

17   with no prospective nature.

18           So that is what I think this Court and the

19   appellate courts that have looked at it have wrestled with.

20           Frankly, the courts have been completely

21   consistent.  No. 1, they have given deference to the

22   Bankruptcy Judge who has been trying to wrestle this giant

23   elephant in the room, these huge asbestos cases, and try to

24   manage them in an effective way.  And that is really what

25   this is all about from Judge Fitzgerald's perspective.  That

1      is, you have got a case with 50,000, 100,000 claimants.

2              The whole reason for the 2019s in the first

3      place was the insurers who were not creditors of the estate,

4      as Garlock is not a creditor, not necessarily a party in

5      interest in the case, although they issued to the debtors,

6      moved for compliance with 2019.  That is how this all sort

7      of began.

8              And the wrestling was should 2019 apply?  Does

9      it have to be strict compliance?  Can I fashion an order?

10     And you see some of that debate here in these papers before

11     you and even in this argument before you as to whether or

12     not then Judge Ginsberg of the Second Circuit who basically

13     said you can fashion a remedy and a lot of courts do

14     different things versus a "strict compliance."

15             So the purpose of what this was for is sort of

16     being turned on its head by this appeal, unless a motion

17     was filed, which Garlock went ahead and did, and proved to

18     the Court that they needed the documents for a legitimate

19     purpose, as Judge Fitzgerald said.

20             They didn't do that.  They filed their motion.

21     They pled their purpose.  But their purpose is when you

22     really boil it down to it, we want it because we want it,

23     period.  Whatever use we make out of it is our business.

24             THE COURT:  And how do I assess whether or not

25     that is a proper purpose or not?

1          MR. ESSERMAN:  Well, Judge Fitzgerald certainly

2     found that she is concerned about the privacy issues, the

3     privacy purpose.

4          THE COURT:  Am I reviewing her factual finding

5     for whether it is clearly erroneous?

6          MR. ESSERMAN:  It seems to me that is the

7     standard that she set in the review of the order.  But that

8     is really not the ground of appeal of Garlock.  Really, the

9     ground of appeal of Garlock is as a matter of law.  We have

10    an absolute right to review this as a matter of law.  Not,

11    it doesn't depend on why I want this thing.  It's I want

12    it because I want it.  And it's a public record.  And the

13    statutes therefore say because it is a public record, I

14    should get it.  And 107(c) wasn't enacted at the time of all

15    of this litigation and therefore disclose these papers.

16         THE COURT:  So you don't think they have a

17    secondary argument that I may have to get into the *Pansy*

18    factors which include whether they are seeking it for a

19    proper purpose?

20         MR. ESSERMAN:  I think you would have to find

21    that Judge Fitzgerald's review of their purpose was clearly

22    erroneous.

23         THE COURT:  Tell me.  As I understand it, you

24    were there through much of this.

25         MR. ESSERMAN:  I was.  It was ugly but I was

1    there.

2                    THE COURT:  Is there something other than what  I

3    have heard today?  And you can tell me, if it's in the briefs,

4    that's fine.  Is there anything contemporaneous with the entry

5    of the Rule 2019 orders, which are not being appealed from

6    today -- I'm not talking about her most recent ruling which is

7    in front of me.  Is there anything contemporaneous that would

8    support the contentions you all are making on your side that

9    the bar and the Court understood there was a very limited

10   scope of what would be considered a proper purpose for getting

11   access to the exhibits?

12                   As I understand, I have the Bankruptcy's Court

13   explanation now.  But you are all contending I could find

14   in the record that you all knew that what Judge Fitzgerald

15   subsequently said was the limited scope of the proper

16   purpose, and I'm just not sure where that is.

17                   MR. ESSERMAN:  I don't know.  It may be in part

18   of our papers, Your Honor.  I'd have to defer to our papers

19   on that.

20                   THE COURT:  Okay.

21                   MR. ESSERMAN:  I do know, I do have the one

22   quote, I think this is from the opinion where the PC motion

23   was denied without prejudice so that if, and when, Garlock

24   identified a specific creditor of Garlock's and established

25   a need for information in the 2019 statements about that

1    creditor, this Court could consider any motion by Garlock

2    for access to that, to the information in the applicable

3    2019s.

4          So I think the standard is we're keeping this

5    information confidential.  There is a reason for it we've

6    articulated, and I found privacy to be important.  These

7    people are elderly.  People would love to pay you.  Do you

8    think you could make money selling a list of elderly sick

9    people who have claims in the tort system?  Yes.  Every

10   insurance agent, every bank, every credit card company would

11   love to get their hands on some list like that.

12         Judge Fitzgerald was sensitive to those

13   concerns; and I believe we have quoted the privacy issues.

14   But if someone articulated a purpose and a need, I think

15   that that was something that they could bring to Judge

16   Fitzgerald and she would make that determination.

17         Now, I do want to add that I do think it is an

18   important factor here that Garlock is not a creditor of

19   any of the entities of these cases.  They have never filed

20   a proof of claim in any of these cases.  And,

21         Most of these cases are closed.  And you may

22   hear some of this in a few minutes.  But most of these

23   cases are closed cases which Garlock is seeking to reopen

24   up, which opens up a panoply of filings, of costs, of

25   issues, all for what reason?  For a case that they were

1  not a creditor, have not filed proofs of claim.  So the

2  relief they seek is really quite broad based.  This is not

3  a surgical strike.

4          I have nothing further.  And I probably have

5  taken more time.

6          THE COURT:  There is five minutes left to your

7  side, if you wish to use it.  Thank you.

8          MR. ESSERMAN:  Thank you.

9          MS. DANDENEAU:  Good morning again, Your Honor.

10  Deborah Dandeneau from Weil, Gotshal & Manges.  I'm here to

11  speak on one point.  And I have a minute for that, I think.

12  And that is the jurisdictional issue.

13          At every stage of the proceeding, the Court

14  has an independent obligation to review its subject matter

15  jurisdiction over the issue.  In bankruptcy, this is

16  particularly so.  As the Third Circuit noted in the *Resorts*

17  *International* case, to prevent what it called the possible

18  unending jurisdiction of a Bankruptcy Court, there must be

19  some test to limit the scope of post-confirmation jurisdiction

20  by Bankruptcy Courts.  It starts with the principle of Paycor

21  which doesn't have any conceivable effect on the bankruptcy

22  estate, recognizes that that is not practical post-confirmation

23  because there is no bankruptcy estate.  So the Third Circuit

24  in *Resorts International* developed the test of, does it have a

25  close nexus to the bankruptcy plan or proceeding?

1          THE COURT:  Let me just ask you if I believe I

2    have supervisory power over court records, be they filed or

3    not, doesn't that resolve the jurisdictional issue at that

4    point?

5          MS. DANDENEAU:  I don't believe so, Your Honor.

6    Because the Bankruptcy Court jurisdiction -- and initially

7    this is a request to the Bankruptcy Court to reopen the case

8    and make a determination of its order.  The Bankruptcy Court

9    jurisdiction is a creation of very limited jurisdiction

10   created by statute.  And the courts have been very clear

11   that the case that is cited by the appellant, *Pansy*, they do

12   not arise in the bankruptcy context.

13         THE COURT:  And what if I believe, as most of

14   you have argued, that the record doesn't need to be opened?

15   That the case doesn't need to be reopened and that it's just

16   either the Court has supervisory power to manage access to

17   records it possesses or it doesn't.  Is there anything left

18   of the subject matter jurisdiction question at that point?

19         MS. DANDENEAU:  I do believe, Your Honor, that

20   again at the end of the day, the notion of closure, not

21   being able to come back and revisit of the Bankruptcy

22   Court's orders is at issue here.  I don't believe that

23   necessarily the supervisory -- I mean that is part of the

24   issue that courts have been faced with in dealing with

25   post-confirmation jurisdiction.  And that is, at some point,

1   it's mostly the reorganized debtors are always coming back

2   and wanting to seek the protection of the ruling of the

3   Bankruptcy Court.  But at some point that has to end and

4   disputes have to end.  And,

5           Here we have a situation where a court order was

6   entered.  Nobody ever complained about it.  Garlock didn't

7   complain about it.  We went for years and there is nothing

8   that involves the reorganized debtors in this dispute, and

9   there is no basis to bring the reorganized debtors cases

10  back into this dispute.  For that reason, Your Honor, we do

11  believe that there is no subject matter jurisdiction within

12  the Third Circuit's law.

13          THE COURT:  Thank you.

14          MS. DANDENEAU:  Thank you.

15          MR. MACLAY:  Your Honor, I'm not really sure

16  if I even have any time left at this point but I do have

17  some points I would like to make.  Could I ask the Court's

18  indulgence for maybe something under 10 minutes?

19          THE COURT:  Ten minutes, no.  I'll give you

20  three to five minutes.

21          MR. MACLAY:  Thank you, Your Honor.

22          Your Honor, with respect to the issue that has

23  been raised -- and my name is Kevin Maclay and I represent

24  the Asbestos Claimants in Flintcote, Grace, NARCO, and

25  Pittsburgh Corning.

1          With respect to the concept that there are

2     people who didn't object to Your Honor, two quick points.

3          First of all, on behalf of the Asbestos

4     Creditors Committee, we objected on behalf of all asbestos

5     claimants.  And as shown in the record of the case below, we

6     fielded a number of calls from attorneys in front of Judge

7     Fitzgerald and let her know, let those people know that we

8     would in fact be putting forward these issues.  They were

9     entitled to rely upon that.  There isn't any basis in the

10    record to say anyone intentionally waived their rights.  And

11    given that many of these cases were closed, their service

12    lists had not been updated and so there is no evidence in

13    the record that the relevant attorneys in many of those

14    cases got notice in the first place.  Because even if you

15    gave notice to the people on the old service list, those

16    hadn't been updated to reflect changes in firms, etc.

17         THE COURT:  So on this record, I can't find that

18    there are non-objectors.

19         MR. MACLAY:  That's correct, Your Honor.

20         Secondly, Your Honor, with respect to the

21    improper purpose point, *Kaiser*, the *Kaiser* case said that

22    when someone would later seek a motion, they would have

23    to demonstrate the proper purpose.  That is what Judge

24    Fitzgerald ruled on here.  It is an inherently factual issue

25    and her position on improper purpose on that is entitled to

1    discretion.  It's just an abuse of discretion standard.

2              And with respect to collateral estoppel, Your

3    Honor.  Garlock said in their reply brief that they never

4    argued public access below.  The documents below will

5    reflect that that is unfortunately not accurate.  They did

6    argue public access before.  It is in their brief, Docket

7    No. 7187 in *Pittsburgh Corning* as well as the other various

8    matters at page 5 in which they said, "Indeed, in judicial

9    proceedings, the presumption is that the identities of

10   parties are available not just to other parties, but to the

11   general public as well."  And,

12             Then they cited the case of *Doe v City of*

13   *Chicago* for the proposition that, "Judicial proceedings are

14   supposed to be open ... in order to be monitored by the

15   public.  The concealment of a party's name impedes public

16   access to the facts of the case."

17             So, in fact, they did make a public access

18   argument in 2009, Your Honor, and she rejected it.  That

19   is one of the reasons why collateral estoppel bars their

20   current attempt.

21             THE COURT:  Now, Judge Fitzgerald didn't reach

22   the collateral estoppel issue here, correct?

23             MR. MACLAY:  That's correct, Your Honor.  That

24   would be under the *Teleglobe* principle that this court can

25   affirm on any basis supported by the record.

1                Secondly, Your Honor, with respect to the 107(a)

2    issue, one thing that hasn't been discussed today is that

3    Section 107 doesn't apply to papers filed in the case.  They

4    have to be filed on a docket of the Bankruptcy Court under

5    the plain language of 107(a).  And Garlock in their brief on

6    appeal to this court said that the Bankruptcy Court "requires

7    that they be kept off the Bankruptcy Court public docket."  I

8    don't think there is any dispute as to whether or not these

9    exhibits were filed on the docket.  Everyone acknowledges that

10   they weren't.  Therefore, under 107(a) it doesn't apply.  And,

11               Finally, with respect to the confidential

12   commercial information, you can look to both in our brief as

13   well as to the variety of cases in the *Alterra* case cited by

14   the debtors.  What those cases have in common is they find in

15   a number of instances that commercial contracts, in particular

16   those containing economic terms such as of compensation are

17   found to be confidential commercial information.  That is

18   another reason why the Judge's decision below should be

19   affirmed.  And their attempts to rely on the decision from

20   *Congoleum* is inappropriate because with respect to these

21   very 2019 orders that are on appeal, the implementation of

22   which are on appeal now, the Third Circuit distinguished the

23   *Congoleum* case as an inappropriate guidepost which is noted

24   in pages 23 and 24 of our brief.

25               THE COURT:  Come back.  You have been very

1    efficient.  Thank you.

2                    Your 107(a) argument, I think I have the

3    language in front of me.  Except as provided in subsections

4    (b) and (c) and subject to Section 112, a paper filed in

5    this case under this title and the dockets of a Bankruptcy

6    Court are a public record and open to examination.

7                    Yet you urge the Court to read that as saying

8    that the paper has to be filed and on the docket.

9                    MR. MACLAY:  That's correct.

10                   THE COURT:  Is there any authority, any court

11   interpretation that would support that reading?

12                   MR. MACLAY:  I'm unaware of any decision

13   reaching that one way or the other, Your Honor.

14                   THE COURT:  Okay.  Thank you.

15                   MR. MACLAY:  Thank you, Your Honor.

16                   THE COURT:  Anybody else, quickly, on the

17   appellees side?

18                   MR. ISENBERG:  Good morning again, Your Honor.

19                   THE COURT:  Good morning.

20                   MR. ISENBERG:  Adam Isenberg for Saul Ewing on

21   behalf of Owens Corning Sales, LLC, formerly known as Owens

22   Corning.

23                   Your Honor, Owens Corning is one of the

24   reorganized debtors.  There are several reorganized debtors

25   before you, Your Honor.  We did coordinate before this

1    morning.  So I'm going to make a few comments and I'll try

2    to hold it to three minutes, Your Honor, on behalf of the

3    following reorganized debtors:  ACS, Armstrong Combustion

4    Engineering, Owens Corning, of course, and U.S. Minerals.

5              Your Honor, it is very clear I think in the

6    papers that none of the reorganized debtors has a position

7    as to whether or not Garlock should or should not be given

8    access to this material.  We do not have a dog in that

9    fight.  And that is clear I think from the materials.

10             What we do care about, Your Honor, is whether

11   our cases are reopened.  The reopening of a case is governed

12   by a statute in Section 350(b) of the Bankruptcy Code which

13   says that a case can be reopened to administer assets to

14   accord relief or for cause.

15             Certainly, there are no assets here to be

16   administered.  There is no relief to be accorded to any of

17   the debtors.  So the only question is whether there is cause

18   under Section 350(b).  There is not a lot of case law, Your

19   Honor, in terms of what precise constitutes cause.  But it

20   is a discretionary matter that depends on the facts and

21   circumstances of the particular case.

22             What we have here, Your Honor, is an opinion

23   by Judge Fitzgerald in which she talks about one of the

24   elements of cause which is prejudice in which what she

25   finds, Your Honor, is that, in her words, there would be

1    enormous -- and that is her word -- enormous prejudice to

2    the reorganized debtors if their cases were to be reopened.

3              Many of the reorganized debtors are public

4    companies.  They have to deal with publicity issues.  They

5    have to deal with possible effect on stock and bond prices,

6    employee morale, management issues, to say nothing, Your

7    Honor, of the administrative expense and burden.  An open

8    bankruptcy case requires filing of reports, fees and things

9    of that nature as well as the disclosure of information.

10   And, again, when you have public companies disclosure of

11   information does matter.

12             So we think that decision, that finding by Judge

13   Fitzgerald is correct and it is certainly not clearly

14   erroneous, Your Honor.

15             If Your Honor determines that 2019 statements

16   should be provided, and again we take no position on that

17   issue, we think Your Honor can easily do that without

18   reopening the cases.  And we cite, certainly Owens, cites

19   in its paper a couple lines of authority based upon the

20   *Nixon v Warner Communications* case, which is an old Watergate

21   era decision as well as some cases from the Third Circuit

22   that in our view, Your Honor, would permit Your Honor to

23   reach that conclusion, if Your Honor wanted to go in that

24   direction.

25             Finally, Your Honor, if Your Honor were to

1    determine that reopening is necessary, and we hope that that

2    is not your finding or determination, we would hope that

3    Your Honor would very carefully tailor the order reopening

4    the cases to make it clear that a couple of things would

5    apply.

6              That the reopening would be solely for dealing

7    with the 2019 issue, No. 1.

8              No. 2.  That the cases would be automatically

9    closed upon the entry of an order dealing with the 2019

10   issue without the necessity of applying back to Bankruptcy

11   Court for closing or any further court order.

12             And, finally, Your Honor, that we wouldn't have

13   to pay U.S. Trustee fees or file reports.  Now, the U.S.

14   Trustee may not agree with that so there are issues there.

15             But the bottom line, Your Honor, again I'm

16   probably longer than I wanted to be, we really don't want

17   our cases reopened.  Again, I think that is clear in the

18   papers.

19             THE COURT:  It is.  Okay.  Thank you very much.

20             Were there other appellees?  I'll give you a

21   minute each, if you wish.  You are over your hour at this

22   point.

23             MR. KLAUDER:  Good morning, Your Honor.  My name

24   is David Klauder.  I'm an attorney for the United States

25   Trustee's Office.

1          We did file an appellee brief and quite frankly

2     I did not anticipate to be heard here but I have to respond

3     to Mr. Eisenberg's last comment, and it is an issue we

4     raised in our appellee brief related to the reopening of

5     the cases.

6          Again, we have no dog in the fight on the 2019

7     statements or whether the cases should be reopened.  I don't

8     mean to --

9          THE COURT:  I understand.  If they are reopened,

10    you think I have to impose all of the requirements,

11    including the fee, to go with an open case.

12         MR. KLAUDER:  Absolutely.  And just to be

13    clear, that is if the cases are reopened for a few minutes

14    or for a few days.  We believe then there are administrative

15    obligations and those then cannot be waived.  So I wanted to

16    make sure that was clear on the record.

17         THE COURT:  That is clear.  Thank you.

18         MR. KLAUDER:  Thank you, Your Honor.

19         THE COURT:  Was there somebody else?

20         MR. LEONHARDT:  Good morning, Your Honor.  I need

21    about 20 seconds.  For the record, Scott Leonhardt, Rosner Law

22    Group, Delaware counsel to ACandS and U.S. Mineral Products

23    Company.  Just to add to Mr. Isenberg's comments.

24         To the extent that the case are reopened and

25    Your Honor orders that the fees need to be paid, we just

1    think that Garlock should pick up the freight for that many

2    orders.  Garlock should indemnify reorganized debtors to the

3    extent any fees, U.S. Trustee, legal fees, clerical fees are

4    incurred.  Thank you.

5                    THE COURT:  Okay.  Thank you.

6                    Mr. Cassada, you can have the final 20 minutes.

7                    MR. CASSADA:  Thank you, Your Honor.  To begin

8    with, Your Honor, I'd like to point out that the so-called

9    *Pansy* balancing factors have no application here.  Those

10   factors were applied by the Court after the Court determined

11   that the settlement agreement that was sought by the

12   newspaper in that case was not a judicial record because it

13   had never been filed.

14           The Court pointed out in its opinion that if the

15   settlement agreement had been filed and under the *Goldstein*

16   standards, the standards that applied to public access, the

17   newspaper automatically would have been entitled to it.  But

18   since it was not a judicial record, the Court analyzed the

19   entitlement of the newspaper under a different standard and

20   that is the standard that applies to confidentiality orders

21   that are entered in connection with discovery.

22           So because we are talking here about judicial

23   records, we are not implicating the *Pansy* factors.  We are

24   looking at the *Goldstein* Standard.  And the *Goldstein*

25   Standard is clear that there is a presumptive right to

1    access that can be overcome only if the person seeking to

2    avoid disclosure proves that the material is the kind of

3    information courts will protect in an injury.

4           We have heard an hour of argument from the other

5    side and we have not heard any evidence of any injury that

6    any court would recognize or has recognized in applying a

7    public access rules.

8           Now, we heard a lot about what the plaintiff bar

9    understood and what the Bankruptcy Court understood and what

10   the Rule 2019 order actually said and intended, but there is

11   no evidence on any of that before the court below.  And,

12   unfortunately, it contradicts the evidence that we do have

13   before us.

14          For example, the 2019 order did not require

15   attorneys who had creditors, who might decide in the future to

16   file a claim, or to assert a right or to -- it required people

17   to comply with the statute.  And that is, it required anyone

18   who entered in an appearance, filed a claim, cast a ballot, or

19   had taken any other affirmative action to participate in the

20   cases to file the 2019 statements.

21          So here, I mean that covers two points.  It is

22   very clear who this applied to.  It only applied to people

23   who came and took action in the case.  The 2019 statement,

24   according to the order here, were required to be filed in

25   the Court.

1            Actually, if you look at Judge Fitzgerald's

2    order denying Garlock public access, she finds in fact that

3    the 2019 statements were filed with the Court.  In footnote

4    16, she found, and explained, that we determine that the

5    information would be filed with the clerk but not placed on

6    the public electronic docket system because of the great

7    potential for abuse:  personal medical information and

8    identity theft because of the identifying information

9    included on the 2019s.

10           So the Court, all indications here, that the

11   record is overwhelming that these materials were filed with

12   the court.  And once they were filed with the court,

13   *Goldstein* applies, not the *Pansy* factors.

14           And, Your Honor, even if they were filed by

15   people who might take an action and even if the dilemma that

16   has been described by the objectors existed -- and there is

17   no evidence that it does exist -- there still has been no

18   showing as to how, as to why documents shouldn't be produced

19   under *Goldstein*.

20           The *Goldstein* factors still apply because these

21   are claimants who authorized their lawyers to appear in the

22   cases for them, and they did appear in the cases, and they

23   listed them in a judicial record.  So *Goldstein* applies.  If

24   the Court is to enter an order protecting the information

25   from disclosure, then those factors have to be met.

1              Likewise, there is no support for the idea that

2      the 2019 order somehow molded and limited the rights that

3      future parties might have to access the document, including

4      their public access rights.

5              Remember, the insurers appealed those orders,

6      saying that they somehow had affected their public access

7      rights.  And the objectors in the case, which I understand

8      included both the debtors and the objecting law firms and

9      indeed I think Mr. Esserman may have appeared and argued for

10     some of those law firms, they moved to dismiss the appeal on

11     mootness grounds and they were saying that this order does

12     nothing to your public access rights because you never filed

13     a motion to ask for public access.

14             That is the proper way to proceed.  You should

15     not have filed an appeal.  You should have moved the Court

16     to give you public access, ask for it and allow the Court to

17     develop a record to determine whether there was any basis to

18     overcome the presumptive right of public access.

19             So the record is clear and the law of the

20     case is clear that the 2019 order doesn't in any respect

21     affect public access rights.  And it left open for parties,

22     including Garlock, to come in and ask for public access.

23             Now, Ms. Ramsey asked the Court to fashion a new

24     rule on public access; that is, that there is a continuum,

25     depending on, that says that there is a different level

1     of access that depends on the extent the documents were

2     actually used in the case.

3              Well, this would obviously be improper.  It

4     would be creating a new law when the Third Circuit has been

5     quite clear on what the public access rules are.

6              Ms. Ramsey said that the 2019s, there is no

7     evidence that they were ever used in the case.  But, in

8     fact, in the Bankruptcy Court's order denying access, the

9     order appealed in this case, Judge Fitzgerald says, yes,

10    they have been used.  She says, in some cases over which

11    this Court has presided, access to 2019s was provided for

12    comparison with ballots cast to ensure that those voting

13    actually represented claimants.  This access was provided to

14    the parties in the case itself, not to strangers to the case

15    who appeared years after the fact to demand access.

16             And she cites in her order a transcript in *USG*

17    which is one of the cases in which access was sought, and

18    that order is before the Court today.

19             So the documents, they were used.  They were

20    used for the purpose of monitoring and policing the vote.

21             There is the statement, the continued statement

22    that the 2019 statements did nothing more than stand as a

23    representation that the lawyers represented the folks listed.

24    But we've seen from the rule which talks about what the 2019

25    statements are supposed to provide, and 2019 statements

1    themselves, that that's not true.  They're unequivocal

2    statements that these persons listed have claims.

3             There was some argument about reliance and how

4    the plaintiff bar came to rely on these statements.  But

5    again, Your Honor, that seems unreasonable given the very

6    language of the order itself which doesn't place any

7    particular limitation on a person's public access rights

8    and the positions that the plaintiff bar took when the

9    insurers appealed and said that the orders did not affect

10   public access.  And the court in that case, the courts in

11   that case again ruled that public access rights were not

12   affected and that is why the appeal was not ripe.

13            If the plaintiff bar really relied on that, it

14   seems like they would have appealed those orders.  They

15   certainly wouldn't have been in those cases arguing for

16   that result.

17            Let me talk about the *Pittsburgh Corning* order

18   because we didn't get a chance to talk about that.  And you

19   heard something about it in this case.  This is thoroughly

20   briefed, Your Honor, so I think the briefs adequately

21   address the issue but I will raise it here briefly.

22            In the *Pittsburgh Corning* case, Garlock appeared

23   and objected to a plan of reorganization and was met with

24   motions to dismiss its appearance on the basis that it

25   lacked standing.

1              Garlock sought access as a discovery matter to

2    the 2019 statements, arguing that those statements would

3    reveal that there is a substantial overlap between cases

4    against Garlock and statements by persons saying that they

5    also had claims against *Pittsburgh Corning*.  If they were

6    common claims, it would be clear then that Garlock had an

7    interest in the case.

8              Garlock also objected.  The purpose of objecting

9    was to object to the trust distribution procedures which

10   allowed claimants to file claims in secrecy.  Garlock

11   objected to that and also sought 2019 statements that sought

12   to demonstrate that when you give claimants the opportunity

13   to participate in a bankruptcy case, sue anonymously without

14   identifying themselves, that it creates the potential for

15   abuse.

16             Garlock wanted to show that, in fact, Garlock,

17   when it said it had claims in the court system, had

18   persistent statements by claimants that they didn't have

19   Pittsburgh Corning exposure when those claimants were

20   actually appearing in the case.

21             Those were discovery motions.  Those were sought

22   for use in the case and that was very clear.  And; in fact,

23   I believe if you look at the pleadings cited by Mr. Maclay

24   that you will see that the focus there was on discovery,

25   and, in fact, the *Doe v City of Chicago* case is not a public

1    access case.  It's a case that basically says that the Court

2    should not allow claimants to appear and sue anonymously in

3    a federal court.

4             So the request there was for discovery.  But

5    collateral estoppel wouldn't apply even if Garlock had

6    raised the access issues because it only applies when those

7    issues are actually litigated and also when a court actually

8    decides.  And, in this case, the Court never mentioned

9    Garlock's public access rights.  And if you actually read

10   the transcript of the argument, it's clear that Garlock was

11   making a discovery request.

12            In the order that was entered, there was

13   nothing, no language in there that actually decides the

14   public access issue.  Absent that, it would be improper,

15   Your Honor, to apply collateral estoppel.  The case law

16   is really quite clear on that.

17            Those were limited to one case.  That is the

18   *Pittsburgh Corning* case, which is not before this Court.

19   And no objector below argued that collateral estoppel should

20   have effect outside of the *Pittsburgh Corning* case.  At

21   least, I don't believe any objector made that argument.  So

22   *Pittsburgh Corning* does not -- that order does not provide a

23   basis for denying Garlock access to public access to Rule

24   2019 statements.

25            I also want to point out, Your Honor, that there

1     is no basis in the record for this idea that there was a

2     dilemma that the lawyers, plaintiff's lawyers faced, and

3     that if they didn't list people who they didn't know were

4     claimants that that might somehow come back to prejudice

5     them.

6              Again, the order entered by the Judge Fitzgerald

7     did not require you to list people who might learn that they

8     have claims in the future.  And there would be no reason to

9     list someone who is not a creditor because they wouldn't want

10    to participate in the case.  And the rule didn't require that.

11    The rule only required that you list creditors.

12             If you read the advisory committee notes, it's

13    clear from the notes that the rule is not interpreted in

14    some way to prejudice a party who would be in a situation

15    that the objectors have described.  The advisory committee

16    note says if immediate compliance is not possible, the court

17    may permit a representative to be heard on a representative

18    matter.  But there is no explicit waiver of compliance on a

19    permanent basis.

20             So there is no adverse effect to any lawyer or

21    for any client if the lawyer doesn't list them on one of

22    these 2019 statements because they don't have evidence yet

23    on whether they have a claim.  The rule itself says that

24    2019 statements can be supplemented.  And that is in fact

25    what happened as the case went along.  Every 60 days or so,

1   there is a requirement they would supplement as they had

2   new clients who they identified as having claims against the

3   debtor.   That is in fact what happened.   There is no record

4   to the contrary that the dilemma that we heard about even

5   exists.

6            THE COURT:   Address the significance of the

7   amendment to Rule 2019.

8            MR. CASSADA:   The amendment, it has no effect to

9   the motion before the Court.   We are here to access 2019

10  statements that were required to be filed in the past and

11  that are required to be in the judicial record.   The new

12  Rule 2019 doesn't have anything to do with that, Your Honor.

13           My understanding of the new Rule 2019 is that

14  any attorney who makes an appearance for any creditor in a

15  case, who has an obligation and takes an action in a case,

16  has an obligation to file a 2019 statement.   So I don't

17  really see that it's materially different from Rule 2019

18  that appeared before.

19           Perhaps if a law firm makes an appearance in a

20  case for creditors but doesn't take any action in the case,

21  under the new rule they don't have to file 2019 statement

22  until they actually take action.   But once a law firm appears

23  and acts in a case for multiple creditors, my understanding of

24  the new rule is they're required to identify those creditors.

25           And, again, Rule 2019 is a disclosure rule.   It

1    requires a filing and a judicial record on a public docket.

2    And once that happens, once any party authorizes a lawyer to

3    appear in a case and to represent that they have claims and

4    describe the nature of their claims which is information

5    that is provided in courts all the time, those filings are

6    subject to public access.  That is really what this appeal

7    is all about.

8                    That's all I have.

9                    THE COURT:  I have a couple more questions for

10   you.

11                   We were read one quote of Judge Fitzgerald, I

12   don't recall if it was in her opinion or was made in court,

13   that makes it clear that she contemplated that any motion

14   for access would relate to a specific creditor and make some

15   particularized request and even a particularized showing.

16   Why should I not interpret the Rule 2019 orders as requiring

17   that and why should I not go further and say you failed to

18   comply with that?

19                   MR. CASSADA:  Well, I believe the quote cited

20   was her order denying our motion for access in the *Pittsburgh*

21   *Corning* case.  And she said if you want these documents for

22   the purpose that you cited, then you have to meet these

23   requirements.  That was not a quote in connection with a

24   meeting of the 2019 order.

25                   Might I add also, Your Honor, that order that

1    was entered in *Pittsburgh Corning* is not a final order?  The

2    Court has entered an order denying Garlock's objection to

3    confirmation based on the conclusion that Garlock lacked

4    standing in the case but that order is not final.

5              THE COURT:  There is no confirmation yet in that

6    case?

7              MR. CASSADA:  There has been no confirmation.

8    Once a confirmation order is entered, then Garlock would

9    have the ability to appeal the Court's determination that it

10   lacks standing and, at that time, appeal the order entered

11   which denied Garlock information that would tend to prove

12   that it did have standing.

13             THE COURT:  There is a couple of references,

14   at least one in your reply brief and I think one of the

15   appellees also, about whether the Court could or should

16   impose any confidentiality limitations if you were to

17   prevail in this appeal.

18             I wasn't sure whether I should infer from the

19   argument in your reply brief that Garlock would be open,

20   as a condition of obtaining some access to some of these

21   exhibits, to have some type of restriction imposed on its

22   use.  Is that something that Garlock is offering or not?

23             MR. CASSADA:  Yes, we did offer that below, Your

24   Honor.  We think that once a Court finds that there is some

25   serious injury that could be rendered, that doesn't end the

1    question.  The Court at that point can then tailor the

2    disclosure to avoid that injury.

3              Now, here, we don't think there is an injury, but

4    we did offer that we would keep the information confidential.

5    And with respect to retention agreements, which we have

6    heard the claim that those are confidential and that they're

7    commercial information, we've indicated that we would not

8    require the retention agreements.  What we're really

9    interested in are the exhibits that listed the creditors and

10   the exemplars where those creditors indicated that they did,

11   they were giving authority to the law firms to appear for them

12   and act in the bankruptcy cases.

13             So, yes, Garlock is open to tailoring to address

14   concerns by the other side.

15             THE COURT:  Okay.  Thank you very much.

16             MR. CASSADA:  Thank you, Your Honor.

17             THE COURT:  I thank all counsel for helpful and

18   interesting briefing and argument today.  We'll take the

19   matter under advisement.  We will be in recess.

20             (Hearing ends at 11:48 a.m.)

21

22        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

23

24                          /s/ Brian P. Gaffigan
                          Official Court Reporter
25                          U.S. District Court